Cubard **MILLER**

v.

Stephen **O'HEARNE, Deputy Commission-
er, Fourth Compensation District,
and
Atlantic & Gulf Stevedores, Inc., Em-
ployer & Self-Insurer.**

Adm. No. 4068.

United States District Court
D. Maryland.

Feb. 25, 1960.

Herbert B. Fineberg, Baltimore, Md.,
for plaintiff.

Leon H. A. Pierson, U. S. Atty., and
H. Russell Smouse, Asst. U. S. Atty.,
Baltimore, Md., for Deputy Commission-
er.

Jeffrey B. Smith and Smith, Somer-
ville & Case, Baltimore, Md., for Atlan-
tic & Gulf Stevedores.

THOMSEN, Chief Judge.

This is a proceeding filed by a long-
shoreman under 33 U.S.C.A. § 921 to re-
view a compensation order.

Claimant, who had a weak back which
had been injured before, sustained a
lumbo-sacral strain on 25 June 1957,

while working for Atlantic and Gulf Stevedores, Inc., and was paid compensation for temporary total disability through 6 August 1957. After several conferences and a formal hearing, the Deputy Commissioner entered an order on 16 January 1959, in which he found that "claimant returned to work as a stevedore on 7 August 1957, without loss of wage earning capacity", and rejected the claim for compensation for partial disability subsequent to 6 August 1957, "on the ground that the injury of 25 June 1957 did not leave residuals causing loss of wage earning capacity". Since claimant admittedly has no scheduled disability, he is not entitled to compensation unless he has an "incapacity because of injury to earn the wages which [he] was receiving at the time of the injury in the same or any other employment". 33 U.S.C.A. §§ 902(10), 908 (c) (21) and (h).

The Deputy Commissioner also filed a memorandum analyzing the evidence on which he based his decision and stating: "The claimant is not only inaccurate in his testimony, in that he denies prior injury or trouble with his back, but he is evasive in his answers."

■■ Claimant seeks review on the grounds that the findings of the Deputy Commissioner arbitrarily ignore the evidence offered on behalf of claimant, are contrary to the weight of the evidence, and are not in accordance with the law. "It is well settled, however, that the Deputy Commissioner's finding is not to be disturbed if it is supported by substantial evidence in the record. O'Loughlin v. Parker, 4 Cir., 163 F.2d 1011; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028. Moreover, any logical inference or deduction drawn from the evidence by the Deputy Commissioner must be taken as a fact and cannot be reviewed. See Contractors v. Pillsbury, 9 Cir., 150 F.2d 310; O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual, supra." Ennis v. O'Hearne, 4 Cir., 223 F.2d 755, 758.

The record shows the following facts, most of which are referred to in the memorandum of the Deputy Commissioner or are undisputed. At the time of his injury in June 1957 claimant was 53 years old, of slight build, with considerable arthritis in his back and a mild spondylolisthesis (a forward displacement of the body of the fifth lumbar vertebra on the sacrum), which was the result of a congenital defect, aggravated by heavy work and advancing arthritis. In 1951 he had sustained an injury to his right knee and a "twisting type" of injury to his back, a mild sprain. He received compensation based upon an estimated disability of his back of 5%. Again, in 1954, he had sustained an industrial accident, resulting in a hernia. His doctors also felt that he was entitled to compensation for a 5% disability of his back, and a compromise settlement of his compensation claim was approved by the State Industrial Accident Commission. There is no medical evidence with respect to the condition of his back between 1954 and the injury of June 1957.

Claimant had been dividing his time between pile-driving jobs and longshore work. The former was lighter work and through 1957 afforded more continuous employment. Longshore work was also plentiful in the contract year 1956–1957, and as a result claimant earned more money than he had since 1951–1952; his average weekly wage at the time of his injury was $122.20, including both types of work.

On 25 June 1957, while stowing bars of copper, his fellow worker slipped, letting the full weight of a bar come on claimant, causing a lumbo-sacral strain. He was treated by the employer's doctor and returned to stevedoring work on 7 August 1957. He was not a member of a regular gang, probably because he had spent so much time pile-driving, but during the next year he did a great deal of stevedoring work. His total hours for the contract year 1957–1958 compared to the contract year 1956–1957 were the same as the ratio for all longshoremen, 75%; the year 1957–1958 was a bad

year, even for the regular gangs. Claimant's total earnings fell off sharply, because he did practically no pile-driving work, and gave up his membership in the Dock Builders' Union. Although claimant blamed this on his injury, the Deputy Commissioner did not believe him, and found that claimant gave up his membership in the Dock Builders' Union because economic conditions did not make enough work available to him to warrant the payment of dues.

■ It is unusually difficult to summarize and evaluate the medical evidence in this case, because the opinion evidence was necessarily based in part on claimant's statements, which were untrustworthy. The fact that plaintiff lied or exaggerated does not disentitle him to compensation for any disability he may have as a result of the injury, but it makes it difficult to determine the extent of his present disability and the cause or causes of such disability as may exist. Dr. Gutman, claimant's expert, concluded that claimant "does have some permanent disability, probably in the neighborhood of 20% loss of use of his back, based on his age, arthritis, complaints and physical findings". He conceded that the arthritis was there before the injury; he could not tell whether the spondylolisthesis was incurred at the time of the injury, but did not believe that it was the congenital type. In this he was contradicted by Dr. Tansey, by Dr. Kilby, an X-ray specialist, and by Dr. Robinson, the Professor of Orthopedic Surgery at the Johns Hopkins Medical School, to whom the X-rays were referred for an opinion. Dr. Gutman felt that the injury of 25 June 1957 caused a strain of the ligaments and soft tissues which resulted in the "complaints and subsequent disability". Dr. Gutman conceded on cross-examination that it was quite possible that the two prior accidents to claimant's back could have lighted up the arthritis and the other defects; however, since claimant said his complaints followed the incident of 25 June 1957, Dr. Gutman "felt that was the cause of his present disability".

Dr. Tansey's testimony is confusing. He testified that the disability in the back amounted to about 20%; but to what extent, if any, that disability should be charged to the injury of June 1957 would depend on what the condition was before the injury. Dr. Tansey assumed, for part of his testimony, that claimant had received a previous award "in the vicinity of 15% to 20%". This, of course, was not so; on the other hand, there is no satisfactory evidence of what the condition was between 1954 and 1957. The overall impression from Dr. Tansey's testimony is that the injury had slightly aggravated the pre-existing condition.

The reports of Dr. Kilby, the X-ray specialist, indicate that there was no change in the X-ray findings from 26 June 1957 to 30 December 1957. Dr. Robinson concurred in this reading and gave as his opinion that the spondylolisthesis has been present for a long time.

■ On the basis of the testimony of Dr. Gutman and Dr. Tansey one would conclude that when a man is already disabled by the combination of age, arthritis and a spondylolisthesis, every additional strain, great or slight, aggravates the disability to some extent. But common sense and the compensation statutes recognize that the permanent effects of some strains are so slight that it is not practicable to award compensation for them. The statute with which we are dealing does not permit the award of compensation for permanent partial disability, aside from scheduled disabilities provided for in sec. 908(c) (1) to (20), unless there has been some loss of wage-earning capacity. Sec. 908(c) (21) and (h).

The lumbo-sacral strain which claimant sustained in June 1957 was evidently not severe, because he returned to his regular heavy work in less than two months and, as the Deputy Commissioner inferred, must have done it satisfactorily.

■ Judge Dobie said in Ennis: "Counsel for the Deputy Commissioner

quite properly points out that the Deputy Commissioner is permitted to disregard medical testimony and rely upon his own observation of Ennis and other evidence before him in making his decision. See Hampton Roads Stevedoring Corp. v. O'Hearne, 4 Cir., 184 F.2d 76; Crescent Wharf & Warehouse Co. v. Cyr, 9 Cir., 200 F.2d 633; Green v. Crowell, 5 Cir., 69 F.2d 762." 223 F.2d at page 758. In Ennis the Deputy Commissioner had not stated the reasons for his decision, and the case was remanded. In this case, however, the Deputy Commissioner filed a memorandum showing the facts upon which he relied and the reasons for his decision that there had been *no loss of wage-earning capacity after 7 August 1957 as a result of the injury.*

■ The Deputy Commissioner referred to the evidence with respect to claimant's work and earnings after the accident, summarized above, but discussed in more detail in the memorandum filed by the Deputy Commissioner. He also had before him the evidence with respect to the X-ray findings, although he did not discuss any of the medical *evidence in his memorandum.* Since the opinions of Dr. Gutman and Dr. Tansey were necessarily based to a large extent on the history and complaints of the claimant, the Deputy Commissioner was justified in giving them little or no weight in this case.

■ After following the case for more than a year, and weighing all of the evidence in the light of his long experience, the Deputy Commissioner concluded that there was no loss of wage-earning capacity *after 7 August 1957 as a result of the injury of 25 June 1957.* It is not the function of this court to find the facts, nor to determine whether the decision of the Deputy Commissioner is supported by the weight of the evidence. I cannot say that the findings of the Deputy Commissioner are "unsupported by substantial evidence on the record considered as a whole". O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 472, 95 L.Ed. 483; Gooding v. Willard, 2 Cir., 209 F.2d 913; Lockard

v. Parker, 4 Cir., 164 F.2d 804; cf. Furlong v. O'Hearne, D.C.D.Md., 144 F. Supp. 266, affirmed 4 Cir., 240 F.2d 958.

The decision of the Deputy Commissioner is hereby affirmed.