Beatrice D. BROWN, Appellant,

v.

NORTHWEST AIRLINES, INC., Continental Insurance Companies and Alaska Workmen's Compensation Board, Appellees.

No. 901.

Supreme Court of Alaska.

Aug. 22, 1968.

William M. Erwin, Savage, Erwin & Curran, Anchorage, for appellant.

George N. Hayes, James K. Singleton, Delaney, Wiles, Moore & Hayes, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

OPINION

RABINOWITZ, Justice.

This appeal arises out of the superior court's affirmance of a decision of the Alaska Workmen's Compensation Board which determined that appellant did not sustain any permanent disability arising out of and in the course of her employment.

Appellant was injured on September 3, 1963, while employed by appellee Northwest Airlines, Inc. According to appellant's uncontradicted testimony, she was "rushing back to the pantry from the storeroom" when she "slipped on this piece of fat meat and it just twisted [her] around." At the time of the fall appellant had been working for Northwest Airlines for seven years.

Appellant's claim for compensation was contested and a hearing was held before the Board on January 19, 1965. On May 13, 1965, the Board entered its first decision in the case awarding appellant temporary total disability payments from the date of injury to the date of hearing. In this decision the Board found that appellant "in. the course and scope of her employment, slipped and fell at her job and injured her back. That this injury was an aggravation of a pre-existing condition and that this aggravated condition continued without abatement to the date of the hearing \* \* \*." As part of this decision, the Board ordered the applicant to be examined by Dr. Thomas Kiester in order to determine "the nature, degree and extent of this injury."

At the first hearing counsel for appellant had requested the Board to withhold any decision on the question of appellant's permanent disability until a psychiatric report was furnished.[1] At the hearing counsel explained the necessity for this psychiatric evaluation in the following manner: "[S]ome of the doctors have said this is, they think, primarily due to a functional overlay which poses a traumatic neurosis. I am trying to pin it down." To this statement appellees' counsel replied: "I see. We'll have to have further reports on that before the Board can make a decision."

Subsequent to the rendition of the Board's May 13, 1965, decision appellees appealed to the superior court, where, upon stipulation of the parties the appeal was subsequently dismissed. On March 17, 1966, a second hearing was held. This hearing consisted almost exclusively of arguments of counsel with the exception of a very limited examination of appellant. In addition to the evidence which had been received in conjunction with the first hearing, the Board had for consideration a January 21, 1965, psychiatric report of Dr. William J. Rader, as well as the medical report of Dr. Thomas E. Kiester dated October 20, 1965. At the conclusion of this abbreviated hearing, appellees' counsel stated that the Rader and Kiester reports "speak pretty much for themselves \* \* \* and the Board should evaluate them as to Mrs. Brown." A second decision, dated May 19, 1966, was thereafter handed down by the Board. In this decision, the Board found

> that the applicant's complaints and disabilities as of January 19, 1965 [the time of the first hearing] and thereafter were not due to, or caused by, or incident to, and did not arise out of the fall she suffered while working for defendant Northwest Airlines, Inc. on September 3, 1963. The Board finds no residual permanent partial or other disability related to said fall on September 3, 1963, and finds further that there were no work-connected or work-aggravated residual disabilities after January 19, 1965.

Based on the foregoing, the Board reached the conclusion that appellant was not entitled to any compensation after January 19, 1965, because "her disabilities as of January 19, 1965, and thereafter did not arise out of and in the cause of her employment."

Appellant then appealed the Board's second decision to the superior court. There appellant contended that she was "entitled to an award \* \* \* finding her permanently, totally disabled on a psychiatric basis as a result of her injury suffered in the course and scope of her employment."

---

1. The record shows that appellant's counsel, Mr. Savage, stated: "I've asked you to hold up the decision until we get Dr. Langdon's report, and then I think the case is ready for decision." Mr. Kirkbride, a member of the Board, replied: "The issue before the Board is whether there was temporary total disability from \* \* \* 1963 \* \* \* [to] the present." Mr. Kirkbride then acknowledged that a psychiatric report from Dr. Langdon would be helpful in resolving the "functional overlay claims." The Board then gave Mr. Savage thirty days to file the psychiatric report and granted appellees the right to comment on the report and additionally to obtain and file their own separate psychiatric evaluation if they so desired.

In affirming the decision of the Board, Judge Fitzgerald wrote in part:

> Dr. Rader's report * * * does not say that the fall was the cause of her disability. If the entire report of Dr. Rader is taken into consideration along with the report of Dr. Kiester, and the limited evidence taken at the hearing I conclude that there was substantial evidence supporting the decision made by the Board.

In her appeal to this court, appellant argues that the superior court erred in its affirmance of the Board's order because the decision is not supported by substantial evidence. Paralleling this contention is appellant's argument that "[t]he sole evidence presented the Board was that the claimant was functionally disabled totally by reason of mental or nervous disorder precipitated by her physical injury on September 3, 1963 * * * and that no evidence to the contrary was presented by the employer."

■ In Keiner v. City of Anchorage,[2] we held, in regard to an administrative board's ruling, that:

> In dealing with this issue we apply the rule that the board's findings should not be reversed if in the light of the whole record they are supported by substantial evidence, i. e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

We have adhered to the substantial evidence criterion which was adopted in *Keiner* in subsequent workmen's compensation decisions.[3] Although the proper standard for review is free from doubt, application of this review criterion to the case at bar is frustrated by the inadequacies of the findings of fact which were filed by the Board in regard to its second decision. In several prior opinions, this court has discussed the question of the necessity for, and the character of, findings of fact which are required of the Board. In Morrison-Knudsen Co. v. Vereen,[4] we said that "[u]nder our Administrative Procedure Act, a decision of the Board is required to contain findings of fact."[5] *Vereen* is in conformity with our earlier opinion in Manthey v. Collier[6] where it was said that:

> The written decision of the Board contains no such findings. We interpret section 19 of the Administrative Procedure Act to require such findings. The Board abused its discretion in failing to follow the mandate of the act. The superior court should have, in the proper exercise of its review jurisdiction, set aside the Board's order and remanded the case for adequate findings. In not doing so, the court committed reversible error.

*Manthey* has recently been followed in Fischback & Moore of Alaska, Inc. v. Lynn[7] where the modification-of-awards section of the Alaska Workmen's Compen-

---

2. 378 P.2d 406, 411 (Alaska 1963) (footnotes omitted).

3. State, Dep't of Highways v. Johns, 422 P.2d 855, 860 (Alaska 1967); Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Bd., 417 P.2d 595, 597–598 (Alaska 1966); Morrison-Knudsen Co. v. Vereen, 414 P.2d 536 (Alaska 1966); Thornton v. Alaska Workmen's Compensation Bd., 411 P.2d 209 (Alaska 1966); Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174, 178 (Alaska 1965); R.C.A. Serv. Co. v. Liggett, 394 P.2d 675, 680 (Alaska 1964); Beylund v. Matanuska Valley Farmers Co-Op. Ass'n, 391 P.2d 176, 178 (Alaska 1964); Forth v. Northern Stevedoring & Handling Corp., 385 P.2d 944, 948 (Alaska 1963).

4. 414 P.2d 536, 539 (Alaska 1966) (footnote omitted).

5. AS 44.62.510(a) of the Administrative Procedure Act provides that:
   A decision shall be written and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The findings may be stated in the language of the pleadings or by reference to them.
   See Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Bd., 417 P.2d 595, 597–598 (Alaska 1966), where we alluded to the *Vereen* case in regard to the necessity for findings and held that there the findings sufficiently disclosed the basis for the Board's decision.

6. 367 P.2d 884, 889 (Alaska 1962).

7. 430 P.2d 909 (Alaska 1967).

sation Act was in dispute. There we held that the case had to be remanded to the Alaska Workmen's Compensation Board for more explicit findings of fact.

■ Here we reach a similar result because we are unable to discern the basis for the Board's conclusion that appellant did not suffer, after January 19, 1965, any residual permanent disability related to her work-connected fall. Admittedly, there is no issue presented in this appeal concerning the fact that appellant failed to prove she has sustained any permanent physical injury and resultant disability. At the second hearing, the Board had the benefit of Dr. Thomas E. Kiester's report in which the doctor stated that after physical examination of appellant, he could find "no definite evidence of permanent impairment." Our remand is limited to and concerns the functional overlay or traumatic neurosis question. As we have previously pointed out, appellant's sole contention in this appeal is that there is an absence of substantial evidence to support the Board's inferential conclusion that appellant was not totally functionally disabled by reason of a mental or nervous disorder which was precipitated by her fall.

The record which was presented to the Board on the first occasion it heard this matter, in part consisted of the medical reports of Doctors George B. Wichman and Perry A. Mead. Dr. Wichman diagnosed appellant's trouble as a "functional skeltomuscular disorder of entire back." According to Dr. Mead's diagnosis, appellant had "a few signs of possible nerve root irritation at the left L–5 and possibly S–1 regions that are superimposed by functional signs and symptoms." At the second hearing the Board had, in addition to these reports, Dr. William J. Rader's psychiatric evaluation of appellant. Under "Clinical Diagnosis,"

Dr. Rader presented the following conclusions:

> Passive agressive personality. Passive dependent type with hypocondriasis. It is my impression that Mrs. Brown is functionally totally disabled, the prognosis for her disability is guarded, and the etiology of this is uncertain. It is my feeling that her divorce and marriage difficulties probably had more to do with her emotional problems as did her fall. Her fall is seen by this examiner not as an etiologic factor but as a precipitating factor in her illness.

Other than appellant's testimony at both hearings as to her inability to work because of her physical condition, there was no other evidence adduced which went to the issue of traumatic neurosis or functional overlay.

■ In view of this state of the record, we believe that three prior decisions of this court have significance here. In Thornton v. Alaska Workmen's Compensation Board,[8] we said:

> It is a well established rule in workmen's compensation law that a pre-existing disease or infirmity does not disqualify a claim under the work-connection requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. The question in a particular case of whether the employment did so contribute to the final result is one of fact which is usually determined from medical testimony.[9]

In *Thornton*,[10] we also said that:

> In these circumstances we find that there is lacking the kind of evidence which a reasonable mind might find adequate to support the Board's determination that the climbing of the tower was not a crucial precipitating factor in

**8.** 411 P.2d 209, 210 (Alaska 1966) (footnotes omitted).

**9.** Cited in support of the text was 1 Larson, Workmen's Compensation Law § 12.20, at 192.41–.47 (1965).

**10.** Thornton v. Alaska Workmen's Compensation Bd., 411 P.2d 209, 211 (Alaska 1966) (footnote omitted).

Thornton's death. Whether 'crucial' or not the evidence shows that the exertion of climbing the tower was a precipitating factor in Thornton's death, and this bolsters the statutory presumption that the death arose out of and in the course of Thornton's employment. The superior court erred in granting judgment for appellees in this action by appellant to set aside the Board's order denying compensation.

■ Additionally, in the case of *Aleutian Homes v. Fischer*,[11] we said:

Compensation is not to be barred because the risk is not generally recognized or because only those unusually susceptible or predisposed to a given disease will contract it.

Also of significance is our opinion in *Morrison-Knudsen Co. v. Vereen*.[12] In that case we stated the following in regard to traumatic neurosis:

[W]e are also of the opinion that there is substantial evidence supporting the Board's finding that claimant suffers from functional overlay, in the nature of conversion hysteria * * *. In this appeal, appellants concede that conversion hysteria (or traumatic neurosis) is compensable if causally related to the physical injury claimant suffered in July of 1960.[13]

■ It is on the basis of the *Thornton, Fischer,* and *Vereen* trilogy that we have concluded this case must be remanded for more explicit findings of fact. These three cases establish that disability flowing from traumatic neurosis is compensable; that compensation will not be barred because appellant was "unusually susceptible or predisposed to" a given mental or nervous disorder; that the appellant is entitled to compensation if the work-connected accident or injury "aggravated, accelerated, or combined with the disease or infirmity to produce * * * disability," or, as we said in *Thornton,* appellant should be compensated if the fall was "a precipitating factor" in any disability resulting from traumatic neurosis causally related to her employment. Guided by these precepts we have concluded that we are unable to determine how the Board reached the decision it did. Dr. Rader's report unequivocally stated that appellant was "functionally totally disabled" and that her fall in 1963 was "a precipitating factor" in appellant's illness.[14] Additionally, there are the medical reports of Doctors Mead and Wichman suggesting the presence of a functional overlay and the testimony of appellant herself as to her disability. No evidence was produced to the contrary by appellees.

Despite the foregoing, appellees argue that the Board was entitled to disregard such medical evidence and to disbelieve appellant's testimony. Appellees support their position by citations of precedent under the Harbor & Longshoremen's Compensation

11. 418 P.2d 769, 777–778 (Alaska 1966) (footnote omitted).

12. 414 P.2d 536, 544–545 (Alaska 1966) (footnote omitted).

13. In conjunction with this portion of the opinion, we refer to 1 Larson, Workmen's Compensation § 42.22, at 616–617 (1965), where the author stated:

Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic or hysterical symptoms, have accepted this rule.

14. Admittedly, Dr. Rader does not state that the etiology of appellant's functional disability "is uncertain" and that "divorce and marriage difficulties probably had more to do with her emotional problems as did her fall." This would not bar recovery under *Thornton* for, as we have previously pointed out, a preexisting disease or infirmity does not disqualify a claim under the work-connection requirement if the "employment aggravated, accelerated, or combined with the disease or infirmity to produce * * * disability" and would not be a bar if the employment was a precipitating causal factor in regard to appellant's traumatic neurosis.

Act.[15] In all of the decisions cited to us, the deputy commissioner had filed a memorandum or findings that he specifically disbelieved the claimant. Typical of these authorities is Ennis v. O'Hearne [16] where the court said:

Counsel for the Deputy Commissioner quite properly points out that the Deputy Commissioner is permitted to disregard medical testimony and rely upon his own observation of [claimant] and other evidence before him in making his decision. (citations omitted)

The Deputy Commissioner's counsel misapplies the rule, however. In this case there is no evidence in the record other than the medical reports and the oral testimony of [claimant], all tending to support his claim. In these circumstances, the Deputy Commissioner must have disregarded all the evidence if he based his decision on his observation of [claimant]. We express no opinion on the value of such a decision or whether we would uphold such a decision if the Deputy Commissioner had stated in his order that he was disregarding all the evidence and relying solely on his observation of the claimant, describing what observation formed the basis of his decision. We cannot affirm such an order, however, where the Deputy Commissioner has not stated that his personal observation formed the basis of his decision when the decision is contrary to the record evidence.

On the state of the record in the case at bar, we believe that adoption of the *Ennis* rationale is appropriate and in so doing, hold that the case should be remanded to the Board for more explicit findings of fact in accordance with the authorities we have heretofore discussed.

Two other contentions made by appellees warrant discussion. As part of its argument in support of the second decision of the Board, appellees rely upon AS 44.62.-460(d) of our Administrative Procedure Act which is applicable to compensation proceedings. AS 44.62.460(d) provides in part that:

Hearsay evidence may be used to supplement or explain direct evidence but is not sufficient by itself to support a finding unless it would be admissible over objection in a civil action.[17]

On the basis of the foregoing, appellees contend that since Dr. Rader's report was hearsay the Board could not base an award of compensation thereon, and thus had no choice but to find against the claimant. Appellant counters with the argument that the Board's own rules provide, in regard to physician's reports as evidence, that: "The Board favors the production of medical evidence in the form of written reports." [18]

Appellant further argues that:

The question poses an unsolvable problem in the mechanics of presenting a case to the Board. If appellant presents his

---

15. In Miller v. O'Hearne, 181 F.Supp. 105, 106 (D.Md.1960), the deputy commissioner disregarded medical testimony since it was based on claimant's own disbelieved statements. There the court said:

> The Deputy Commissioner also filed a memorandum analyzing the evidence on which he based his decision and stating: 'The claimant is not only inaccurate in his testimony, in that he denies prior injury or trouble with his back, but he is evasive in his answers.'

In Burkett v. O'Hearne, 132 F.Supp. 690 (D.Md.1955), the deputy commissioner disregarded medical testimony largely because it was based on the history related to the doctors by the claimant who was himself disbelieved. But in *Burkett* the commissioner filed a memorandum specifically setting forth the reasons why he found the claimant, and consequently the doctors, unworthy of belief. In Simmons v. Marshall, 94 F.2d 850 (9th Cir. 1938), the deputy commissioner filed a memorandum stating specifically that he found claimant to be unworthy of belief.

16. 223 F.2d 755, 758 (4th Cir. 1955).

17. The provisions of AS 44.62.460(d) have been substantially promulgated and adopted by the Board in its rules of practice and procedure in disputed claims. 8 Alaska Adm.Code § 436 (1959).

18. 8 Alaska Adm.Code § 432(c) (1959).

medical evidence by written report, it cannot be objected to by the appellee because under the law it is clearly admissible. If the decision is then based solely upon those reports without recourse to the other testimony, then appellee may, as he has here, object on the grounds that the residuum rule requires other evidence to be submitted. Appellant believes this to be unfair and an unjust position to be forced into in the light of Board practice. It is true he has the option of calling all medical witnesses and avoiding the problem, but this seems to defeat the reason the Board favors written reports and makes complicated a procedure that is designed for quick disposition of claims.

We find it unnecessary to answer the broad question involved here because appellees made no objection to the admissibility of the reports [19] at either of the hearings which were held before the Board. As we have pointed out earlier, counsel for appellees informed the Board that they would have to evaluate Dr. Rader's and Dr. Kiester's reports in deciding the case. Further, if appellees are correct, then on the state of this record, Dr. Kiester's report is clearly hearsay and just as clearly inadequate for the purpose of furnishing a basis for the Board's denial of compensation to appellant.

Appellee's final point in support of the Board's second decision is that we should apply the same rule we adopted in Bowker v. State.[20] There defendant claimed that she was insane at the time she shot and killed her husband. The only evidence produced on the issue of insanity was that of a psychiatrist who had been called by the defense. Defendant claimed that since the state did not produce an expert witness to rebut her expert testimony of insanity, "the jury was not competent to pass upon her mental condition" and the trial court erred when it failed to enter a judgment of acquittal. In passing on these contentions, we said:

> We shall not adopt a rule which would treat medical testimony as conclusive merely because it is not disputed by other medical testimony. The jury should be free to make an independent analysis of the facts on which the expert's opinion rests, and thus exercise their historic function of passing on the credibility of the witness. If we were to follow Douglas and accede to defendant's argument that the jury was not competent to pass on her mental condition because of Dr. Cheatham's testimony, we would be transferring the jury's function to the psychiatrist and substituting a trial by experts for a trial by jury.[21]

In our opinion the fundamental differences in the character of a criminal and workmen's compensation proceeding discloses the inappropriateness of making the *Bowker* insanity-expert-witness rule part of our compensation law. Without intending any weakening of *Bowker* as a subsisting evidentiary rule in criminal trials, we decline to mandate *Bowker* as an evidentiary criterion for decisions of contested compensation claims.

The case is remanded to the superior court for remand to the Alaska Workmen's Compensation Board for further proceedings in conformity with this opinion.

19. Savelli v. Board of Medical Examiners, 229 Cal.App.2d 124, 40 Cal.Rptr. 171 (1964).

20. 373 P.2d 500 (Alaska 1962).

21. Bowker v. State, 373 P.2d 500, 501–502 (Alaska 1962). The quote refers to Douglas v. United States, 99 U.S.App. D.C. 232, 239 F.2d 52 (1956).