Regina WADE, Personal Representative of the Estate of Gerald Wade, Deceased, Appellant,

v.

ANCHORAGE SCHOOL DISTRICT, Appellee.

No. S–1819.

Supreme Court of Alaska.

Aug. 14, 1987.

---

M. Ashley Dickerson, M. Ashley Dickerson, Inc., Anchorage, for appellant.

Tasha Porcello, James M. Bendell and Associates, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

### I. INTRODUCTION

Appellant Gerald Wade was hired by appellee Anchorage School District (ASD) as a security guard at Service High School in August 1977. Wade reported a wide range of real or imagined acts of racial, sexual and physical harassment on the job. Wade quit his job with the ASD upon the advice

of his psychiatrist in December 1983. He then sought workers' compensation benefits for disability due to emotional stress and a back injury. The Alaska Workers' Compensation Board (the board) held that Wade was not entitled to compensation for either his back or stress injury. The superior court affirmed the board, holding that substantial evidence supported its decision.

Wade has committed suicide; his estate appeals. In *Fox v. Alascom,* 718 P.2d 977, 982 (Alaska 1986), we rejected the use of objective threshold requirements for determining whether an employee's stress injury was caused by job-related stress. The board relied on one such requirement in rejecting Wade's stress claim. Therefore, we reverse the board's determination that the stress claim was not compensable. We remand the case to the board for determination of the appropriate award. We affirm the board's denial of Wade's back injury claim.

### II. FACTS AND PROCEEDINGS

Gerald Wade, a black man, was hired as a Safety and Security/Home School Coordinator (essentially a school security guard) at Service High School by the Anchorage School District in August 1977. He had no prior history of psychiatric care.

In March 1978, after making a "drug bust" at work, Wade experienced an overpowering malaise and felt he had to leave work at once. Wade immediately sought treatment; he was referred to a psychiatrist the same day.

Wade's psychiatrist referred him to Dr. Enter for psychological testing. Dr. Enter first administered a Minnesota Multiphasic Personality Inventory (MMPI). The MMPI yielded a "technically invalid profile," indicating either an overt attempt to look bad, a plea for help, or psychosis. Dr. Enter then administered a Rorschach test and a sentence completion test, both standard projective psychological tests. The results "point[ed] toward psychotic processes."

In August 1978, Wade began counseling at Ohlson Psychological Services with David Sandberg under the supervision of

Dr. Ron Ohlson. Wade was treated for a "delayed grief reaction" and was diagnosed as having "an underlying paranoid personality disorder." Ohlson testified that Wade was under severe stress at work. Sandberg also identified Wade's work stress as significant. Sandberg stated that nothing in Wade's psychological background that he was at liberty to discuss [1] was as significant as his work in causing his problems. Wade apparently remained in counseling at the Ohlson Clinic until early 1984.

Wade's school district performance evaluations in 1980 and 1981 rated him proficient or exceptional. Between 1979 and 1982, Wade compiled a number of positive recommendations from the faculty and staff of Service High.

However, Wade believed that he was subject to extensive racial discrimination at Service. Wade filed a sexual harassment complaint with the ASD against a male coach who allegedly touched his buttocks on several occasions; the coach received a written reprimand for one such confirmed incident. The ASD investigating officer testified that the incident was described by the coach as an athlete's gesture after a good game.

Wade was injured on the job on October 28, 1981 when he attempted to break up a fight between two students. He was kicked in the stomach by a karate-trained student. This incident was reported. In a prior unreported incident, Wade hurt his shoulder jumping out of the way of a truck driven by a student Wade had pursued for drug possession. Nevertheless, Wade worked as a construction laborer in summer 1983.

In fall 1982, Wade accepted a transfer to Wendler Junior High. Wade complained about harassment at Wendler based on incidents which were flatly denied by others or which appear simply harmless (*e.g.*, music students practicing in the hall outside Wade's office). During the school year, his office-mate, a counselor, was fatally stabbed. Wade claimed that his co-workers accused him of the murder. He alleged

incidents of harassment or discrimination; individuals involved denied the incidents.

Wade was a very muscular man; he won the title "Mr. Alaska" in a 1983 body-building contest. His muscular body evidently intimidated at least one of his Wendler co-workers.

Wade was transferred to Clark Junior High in fall 1983. He voluntarily terminated his employment with the ASD on December 1, 1983. The record is not clear concerning the events that led to Wade's termination. He seemed incoherent about this period during his testimony before the board.

In January 1984, Dr. Ohlson stated in a letter to Wade's counsel that Wade's

> employment situation serves to enhance his experience of threat and paranoia, and recently he has been increasingly unable to separate reality from fantasy to the extent he can make rational decisions concerning his actions or behavior.... It is my opinion that this man should be immediately relieved from his present job on the basis of medical disability as a result of mental and emotional dysfunction that are at least contextually job related.

Wade received an extensive series of treatments for shoulder and back problems in June 1984. He was referred to Dr. Wolf, a psychiatrist, by the Alaska Division of Vocational Rehabilitation in February 1984. Dr. Wolf diagnosed Wade as having "Axis I: Adjustment Reaction with Anxiety—Severe" and "Axis II: Paranoid Personality Disorder." He stated that "Wade has an underlying paranoid state that rises fairly frequently to the level of a psychosis, but not absolutely on an every moment basis." In letters to Wade's counsel, Dr. Wolf stated, "it is at this late date somewhat difficult to tell the exact origin of his condition. It certainly would appear both from his own reports and those of Ohlson Psychological Services that it arose out of circumstances surrounding his employment with the Anchorage School District."

---

**1.** Wade's wife had been in treatment with him during part of his treatment; she did not waive her patient-physician privilege. *See* Alaska R.Evid. 504(b).

Wade initially filed for workers' compensation for stress-related disability in November 1983. The ASD contested his claim in December 1983. Wade amended his claim three times, adding a claim for a back injury and seeking additional disability compensation. In October 1984, the ASD agreed to pay Wade's medical bills and temporary total disability benefits in an interim settlement. In April 1985 the ASD petitioned the board to terminate Wade's benefits. After a hearing, the board granted the ASD's petition. The board held Wade's back injury claim time-barred under AS 23.30.105(a) because it was not filed until more than two years after the injury. In the alternative, it held that the ASD had overcome the presumption of compensability of AS 23.30.120(1) and that Wade had then failed to prove that the back injury was caused by his employment.

A majority of the board then held that Wade had not suffered a compensable stress disability. The majority excused the late filing of the claim pursuant to AS 23.30.100(d)(2) because the nature of the injury precluded notice. The board held that a stress injury was compensable only if the worker suffered unusual stress not shared by others in the profession.[2] The designated chairman of the panel dissented because he believed Wade was subject to unusual stress and that the stress substantially aggravated his condition.

On appeal, the superior court upheld the board decision on both counts. Wade appeals.

### III. DISCUSSION

#### A. Stress claim

We recognized that a purely mental injury was compensable under Alaska workers' compensation law in *Brown v. Northwest Airlines*, 444 P.2d 529, 533 (Alaska 1968). In *Brown*, the employee's disabling injury was traumatic neurosis which was precipitated by an on-the-job fall. We held that a mental disability was compensable if a work-related accident aggravated, accelerated or combined with a pre-existing disease or infirmity to produce the disability. *Id.*

In *Fox v. Alascom*, 718 P.2d 977, 978 (Alaska 1986), we held that mental disability due to non-traumatic, gradual work related stress was compensable.[3] We also determined that no special rules or limitations would apply to the determination of whether a mental injury was compensable. *Id.* at 982. Instead, a mental injury claim "should be analyzed in the same way as any other claim for workers' compensation benefits." *Id.* at 984.

Fox, a clerk, alleged that she was disabled by a nervous breakdown caused or brought on by the stress of her job. Her psychologist testified that she was not malingering and that in her mind the job was her only source of stress. He went on to state that, though her work relationships had created stress for her, many other factors in her life were more likely to be the "real sources" of her stress. *Id.* at 979.

We reversed the board's ruling that Fox's disability was not compensable because the board failed to give Fox the presumption of compensability to which her evidence, by establishing a "preliminary link" between the job and the injury, entitled her.[4] *Id.* at 984. We expressly reject-

---

**2.** The board cited *Delaney v. Alaska Airlines*, 693 P.2d 859, 864 (Alaska 1985) and *Fox v. Alascom*, 3 AN–83–7091 Civil (Super.Ct. April 26, 1984). *Fox* was subsequently reversed on appeal, 718 P.2d 977 (Alaska 1986).

**3.** *Fox* was not handed down until after the board's decision in Wade's case had been issued. 718 P.2d at 977. The ASD implicitly concedes that *Fox* applies to this case. A new rule of law that constitutes a "clear break" from existing law may be applied only prospectively, *Commercial Fisheries Entry Comm'n v. Byayuk*, 684 P.2d 114, 117–18 & n. 10 (Alaska 1984), although

generally a new rule of civil law will be applied retroactively. *Plumley v. Hale*, 594 P.2d 497, 502 (Alaska 1979). In the absence of argument by the parties on this issue, we apply the *Fox* rule retroactively, in accordance with the general rule.

**4.** In worker's compensation cases, compensability is presumed once the worker establishes a "preliminary link" between his employment and his disability. The employer can rebut this presumption by producing substantial evidence that the injury is not compensable. Thereupon, the presumption drops out, and the employee

ed the use of special limiting standards in determining mental stress claims. We specifically examined and rejected the "greater than all employees must experience" test; we also rejected "any other additional 'objective' threshold requirement."[5] *Id.* at 982. We rejected the "honest perception" test proposed by Fox, by which the mental disability would be compensable if the employee honestly, even if mistakenly, perceived that job stress caused the disability. *Id.* at 983.

The board found that Wade's evidence established a presumption of compensability, but that the ASD rebutted the presumption. The board then held that Wade failed to prove compensability because he failed to show that he experienced greater stress than was usual in the profession. The board also rejected Wade's expert testimony, which established that his work stress was a significant factor in his disability, because it was based on Wade's inaccurate perceptions of his work environment. This case thus raises two issues not clearly resolved by *Fox:* (1) can the "unusual stress in the profession" test be used to evaluate a stress claim once the presumption of compensability has been established; and (2) can the board reject expert testimony that a claimant's mental injury is related to job stress if the experts have no independent knowledge of the actual circumstances of the claimant's job?

1. Rejection of the "unusual stress in the profession" test

■ In *Delaney v. Alaska Airlines*, 693 P.2d at 864, we rejected an airline pilot's

claim that job stress aggravated his preexisting physical condition (Crohn's disease) resulting in his disability. One reason we gave for denying the claim was that Delaney "was a 'usual' pilot and not subject to 'unusual' stress not shared by others in his profession." *Id.* *Fox* expressly rejected this "greater than all employees must experience" test and other objective threshold requirements for mental injury claims. 718 P.2d at 982. In *Fox,* we explained that the *Delaney* decision was based upon the employer's unequivocal expert testimony that job stress was not a factor in producing Delaney's disability. *Id.* at 983.

In this case, the board used the "unusual stress in the profession" test as the sole criterion for its determination that the ASD rebutted Wade's presumption of compensability. Furthermore, it was the most important criterion for the board's decision that Wade had failed to meet his burden of proving compensability. Insofar as the "unusual stress in the profession" test is dispositive of a stress claim, it is a "threshold" requirement and is precluded by *Fox.* Therefore, we must reverse the board's decision that Wade's mental injury was not substantially related to his job stress.

Unusual stress in the profession may be relevant to determining whether a stress disability suffered by an employee was job related. An employee who experienced greater stress on the job than his colleagues, and suffered a stress-related injury, may use evidence of this comparison as part of his proof that the stress was job related. However, the fact that an employ-

must bear the burden of proof as to each element of the claim. *Delaney,* 693 P.2d at 862; *see* AS 23.30.120(1) ("In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter ...").

**5.** The "greater than all employees must experience" test compares the stress experienced by a claimant to that experienced by other employees generally. *Fox,* 718 P.2d at 981–83; *see School Dist. No. 1 v. Dep't of Industry, Labor and Human Relations,* 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974). Thus, a librarian, whose job is generally low in stress, may find it difficult to

establish a stress injury, while a highly stressed executive may have an easier time establishing such an injury. Another test for job related stress may be called the "unusual stress in the profession test." This test compares the stress experienced by the claimant to that experienced by others in the same profession. *E.g., Sloss v. Industrial Comm'n,* 121 Ariz. 10, 588 P.2d 303, 305 (1978). This test would deny benefits to an "eggshell" claimant in a stressful job, apparently on the theory that he assumed the risk of the stress when he took the job. *See* Sersland, Mental Disability Caused by Mental Stress: Standard of Proof in Worker's Compensation Cases, 33 Drake L.Rev. 751, 775–79 (1983–84).

ee did *not* suffer greater than usual stress on the job is of limited value in determining that the employee's stress was not job related. An employer cannot dismiss one employee's response to job stress because other employees in the field do not become disabled in response to identical stress. The employer must take the employee "as he finds him." *Fox,* 718 P.2d at 982; *S.L.W. v. Alaska Workers' Compensation Board,* 490 P.2d 42, 44 (Alaska 1971); *Wilson v. Erickson,* 477 P.2d 998, 1000 (Alaska 1970). We will not preclude "eggshell" claimants, like Wade, from recovery in workers' compensation solely because they succumb to stressful job conditions to which others in the profession do not succumb. *See Fox,* 718 P.2d at 982. We would not preclude a worker from recovery in workers' compensation for an injury received in a fall although other more hardy workers would not have suffered from the same fall. To the extent that *Delaney* suggests otherwise, it is disapproved. We conclude that the board erred in relying on evidence that Wade did not experience unusual stress not experienced by other school security guards.

2. Evaluating expert testimony on the impact of job-related stress

■ In determining that Wade failed to prove that his stress disability was job-related, the board rejected Wade's medical experts' testimony that his job stress was a major factor in Wade's disability. This testimony must be "given less weight," the board held, because it was based on Wade's "faulty perceptions" about his job environment. Although Wade disputed it, the board had substantial evidence from which it could conclude that Wade's illness resulted in his misperceiving the reality of various events at school. The testimony of Wade's own experts confirmed that he was psychotic and delusional. Depositions of his co-workers at Wendler contradicted Wade's allegations of a number of incidents. It is also clear that Wade's psychotherapists did not independently verify

Wade's stories about the events he claimed to have experienced at work.

The psychotherapists agreed, however, that Wade's mental problem was significantly related to his employment. The ASD did not introduce any contradictory medical testimony, nor did its cross-examination lead Wade's experts to equivocate on this issue.

In *Fox,* we held that a mentally disabled employee's honest perception that her disability resulted from job-related stress was not dispositive on that issue. 718 P.2d at 983. We rejected the holding of *Deziel v. Difco Laboratories, Inc.,* 403 Mich. 1, 268 N.W.2d 1, 12–13 (1978), in which the Michigan court adopted this "honest perception test" because psychoneuroses were by definition subjective injuries existing only in the minds of the victims. *Fox* did not hold, however, that honest perceptions were entirely immaterial to the issue. We noted that "[a] test that focuses *exclusively* upon the employee's honest perception ignores the statutory directive [that the injury arise out of employment] because it does not ask whether the mental injury arose from an employment related risk *nor does it even look to whether an employee's subjective reaction to work stresses actually contributed to the injury."* 718 P.2d at 983 (emphasis added).

If the board were to reject expert psychotherapist testimony on the relationship between an employee's mental injury and his job-related stress solely because the psychotherapist based his opinion on this issue *in part* on the unverified and incorrect statements of the employee, a psychotic individual might never be able to prove that his employment contributed to his psychosis. A psychotic, by definition, misperceives objective reality.[6] Wade's psychotherapists did not accept all his assertions about his job as true, but nevertheless attributed a significant amount of his debilitating stress to his job.

---

**6.** *See,* T. Stedman, *Stedman's Medical Dictionary* 1166 (5th ed. 1982) (defining psychosis). This paradox was implicit in ASD's counsel's question to Dr. Ohlson, "Well, if people are really out to get him then Mr. Wade is quite accurate in his perception, he's not ill."

In *McGarrah v. State Accident Insurance Fund,* 296 Or. 145, 675 P.2d 159, 170–71 (1983), the Oregon court hypothesized a paranoia case strikingly similar to the instant case:

A worker may honestly believe that the employer plans to kill him and as a result of that fear cannot work, but if that belief emanates only from the worker's own paranoia and there was no evidence the employer had any such plan, no stress condition factually existed on the job and the resulting impairment would not be compensable. On the other hand, a worker with a non-disabling paranoid personality may lapse into a totally disabling psychotic paranoia if managers pile too heavy a workload on such a susceptible employe. Honest perception exists in both cases, but workers' compensation would be properly denied in the first case and properly allowed in the second.

Admittedly, Wade was an "eggshell" claimant. His paranoid personality disorder was apparently latent in his background prior to his early adulthood. Nevertheless, the experts uniformly agreed that Wade's job stress played a significant role in his disability.

As we stated in *Delaney,* "our task is not to independently reweigh the evidence, but to determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion." 693 P.2d at 863 (footnote omitted). The record as a whole does not support the board's finding that Wade's stress was not job-related. The only direct evidence on this issue was the testimony of Wade's psychotherapists that his job stress did significantly contribute to his illness. The fact that he had other sources of stress does not detract from the assertion that job stress significantly contributed to the illness.

In *Brown,* we stated, " 'the question whether the employment did so contribute to the final result is one of fact which is usually determined from medical testimony.' " 444 P.2d at 532 (quoting *Thornton v. Alaska Workmen's Compensation Board,* 411 P.2d 209, 210 (Alaska 1966)). To refute the presumption of compensability, the ASD could have rebutted this testimony with contradictory medical testimony. It did not do so. *Cf. Fox,* 718 P.2d at 979 (psychologist testified that while claimant *thought* her job stress caused her mental disability, her *real* sources of stress were from outside her job). Testimony that the job was inherently stressful and that Wade did not experience "unusual" stress is not legally pertinent to the issue. We conclude that the board erred in finding that Wade's illness was not job-related.

Moreover, because Wade is now dead, additional medical testimony will be of limited value. We find, based on the record as a whole, no substantial evidence that the employment did not play an active role in the development of the mental disability. *See Fox,* 718 P.2d at 984. Therefore, we hold that Wade established his entitlement to worker's compensation. We remand this case to the board for its determination of the appropriate award.

### B. Back Injury

Wade's third amended claim for adjustment added a claim for physical injury described as "neck, shoulder, back and internal injury sustained in breaking up student fight" sustained on October 28, 1981.[7] The board denied this claim because (1) the claim was barred by the two-year limitation for filing of claims imposed by AS 23.30.-105(a) and (2) even if it weren't barred, the employer rebutted the presumption of compensability by substantial evidence and Wade then failed to prove his claim. The superior court affirmed, stating "[t]here was substantial evidence to support the board's finding that the back injury was

7. The board noted that Wade testified he developed back pain due to stress. Such testimony would effectively give rise to a new claim for a mental stimulus causing a physical injury. However, Wade gave no notice of such a claim to the ASD or the board and did not argue it, either before the board or on appeal. We do not address the possibility that Wade somehow made out a claim for a back injury caused by on-the-job stress.

not a 'compensable injury.' " The superior court does not clarify whether it upheld the board on the timeliness issue.

### (1) Timeliness

AS 23.30.105(a) states:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years *after the employee has knowledge of the nature of the employee's disability* and its relation to the employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

(Emphasis added.)

■ The board found that this section barred Wade's back injury claim because he received the injury on October 28, 1981 but did not file a workers' compensation claim on it until July 27, 1984, more than two years later.

However, the board did not make a finding of fact concerning the date that Wade had "knowledge of the nature of [his] disability." Apparently his back problems became increasingly severe over time. Absent a finding of fact giving a particular date from which Wade knew the nature of the disability, it is impossible to determine whether his claim was filed within two years of that time. We cannot affirm the denial of the back claim on this ground.

### (2) Rebuttal of Presumption and Burden of Proof

■ The board held that even if the back injury claim were not time-barred, the inju-

ry was not compensable because the ASD rebutted the presumption of compensability and Wade failed to prove by a preponderance of the evidence that the injury was compensable. Our standard of review on this issue is the substantial evidence standard. *Veco, Inc. v. Wolfer,* 693 P.2d 865, 869 (Alaska 1985).

The board apparently erred in its statement that "we rely on the employee's weight lifting achievements...." The evidence is fairly clear that Wade's Mr. Alaska award was not specifically for weight lifting. This error is harmless, however. The board had substantial evidence before it that Wade did lift weights following his alleged injury. The board could find that Wade's explanation that he limited his workouts to minimize the back strain was not credible. There was no unequivocal medical evidence that Wade's back problems in 1983 were causally connected to his 1981 injury. Dr. Lathen stated that, "In my guarded medical opinion, that—that injury could be contributed [sic] to it [the 1981 injury]." Dr. Lathen stated that "it's unusual that weight lifting would cause him to have a painful arc syndrome of the shoulder or a whiplash" but "weight lifting can contribute to back strain."

We find that the board had substantial evidence on the record from which it could conclude that Wade failed to prove that his back injury was compensable. We therefore affirm the board's decision denying Wade's back injury claim.

REVERSED and REMANDED in part, AFFIRMED in part.