James R. YOCOM, Commissioner of Labor and Custodian of Special Fund, Appellant,

v.

Ernestine PIERCE et al., Appellees.

Supreme Court of Kentucky.

Feb. 20, 1976.

Earl Cornett, Gen. Counsel, Dept. of Labor, Frankfort, Timothy P. O'Mara, Asst. Counsel, Dept. of Labor, Louisville, for appellant.

Craig Housman, Charles A. Williams & Associates, Richard C. Roberts, Thomas B. Russell, Threlkeld, Whitlow & Roberts, Paducah, for appellees.

STERNBERG, Justice.

This is an appeal from a final order of the Graves Circuit Court affirming the opinion and award of the Workmen's Compensation Board, which granted claimant Ernestine Pierce compensation for a permanent partial disability.

Mrs. Pierce is 48 years of age and had worked for the Merit Clothing Company for almost 30 years. On February 6, 1973, while working at her job as a ticket operator, she suffered a nervous breakdown and has not been able to work from that date. The employer is a clothing manufacturing company. Mrs. Pierce worked on a production job that required much concentration. She was required to ticket various items of clothing for different colors of thread and to match the threads with the dominant color in the garments.

The board found that on February 6, 1973, Mrs. Pierce suffered a non-traumatic work-related neurosis while working as a ticket operator in the Merit Clothing Company's factory; that claimant sustained a 25% permanent partial occupational disability; that prior to the injury she had no active occupational disability but did have a dormant nondisabling disease or condition which was aroused or brought into disabling reality to the extent of 20% occupationally to the body as a whole; and that the remaining occupational disability was attributable to a work-related harmful change in the human organism.

The Special Fund appeals. The employer cross-appealed; however, we need not consider the cross-appeal as it has been withdrawn. The award and the judgment of the circuit court as between claimant and her employer is final.

The only medical testimony brought before the board was from Dr. Frederick C. Ehrman and Dr. Frank Kodman, Jr. Claimant was referred by the board to Dr. Ehrman for psychiatric evaluation. After the doctor's examination and evaluation, he reported that claimant was not suffering from any active disability prior to February 6, 1973; that her personality makeup or structure represented a dormant nondisabling condition capable of being aroused

into disabling reality by subsequent events; that the alleged injury of February 6, 1973, would not have produced the entire disability, which he placed at 10% to her body as a whole; and that the percentage of disability was the result from the arousal into disabling reality of a dormant nondisabling condition capable of being aroused into such reality by the occurrence of the February 6, 1973, incident.

Dr. Kodman made an in-depth interview and psychological evaluation on claimant. He found that she had " * * * a severe chronic neurosis, marked by a high degree of anxiety and inability to tolerate any stress * * *," resulting in " * * * a handicapping condition which renders her basically helpless * * *." As to her ability to be gainfully employed, Dr. Kodman said, "At the time of this examination in March of 1974, my opinion would be that she could not be gainfully employed." He stated that her condition was caused by " * * * an anxiety neurosis that has gradually increased in severity over the past ten years. I think that the demands made by her work at the plant simply is a factor that tilted her over so that she was simply unable to cope with the requirements of her job."

The Special Fund complains that the board erred in finding that claimant's disability was the result of a work-related neurosis which occurred while she was employed by the Merit Clothing Company.

At the time of claimant's work-related neurosis the liability of her employer or the Special Fund had its origin in KRS 342.-610(1) and KRS 342.620(1). These statutes provide:

"342.610 Liability for compensation.

(1) Every employer subject to this chapter shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death.

 * * * * * *

"342.620 Definitions. As used in this chapter unless the context otherwise requires: .

(1) 'Injury' means any work related harmful change in the human organism, including damage to or loss of a prosthetic appliance, but does not include any communicable disease unless the risk of contracting such disease is increased by the nature of the employment. 'Injury' when used generally, unless the context indicates otherwise, shall include an occupational disease."

In fixing liability on the employer, the board found that claimant suffered a " * * work related harmful change in the human organism which event occurred February 6, 1973 and is occupationally disabling to the extent of 5% to the body as a whole." Appellant charges that this finding is not supported by the evidence of record. Counsel for appellant directs our attention to former KRS 342.005, which was the statute that provided guidelines for establishing liability as between the employer and the employee prior to its repeal at the regular session of the 1972 General Assembly (Chap. 78, Sec. 36, SB 184). Appellant contends that the change in the definition of "injury" still imposes certain criteria which must be established in order for an injury to be compensable and that this criteria is something more than the requirement that the injury occurred in the course of the claimant's employment.

The enactment of KRS 342.610 and 342.-620 brought into focus the determination of the legislature to bring relief to employees who suffer from work-related disabilities brought about by other than physical trauma. Literally, hundreds of persons who had suffered work-related disabilities but which were not a direct result of physical trauma found themselves without relief. The repeal of KRS 342.005, the enactment of KRS 342.610 and 342.620, and the amendment of KRS 342.120 have placed a new focus on work-related disabilities which are not the direct result of physical trauma. Thus, we have the definition of "injury"

broadened to include "any work related harmful change in the human organism."

Dr. Ehrman, in describing claimant's current physical work-related condition, said that she has dizzy spells; gets tied in "knots"; wanders around and doesn't know where she is; and represents a chronic hysterical personality with pronounced dependency traits. Dr. Kodman described her as having dizziness, incoordination, lack of confidence, withdrawn from normal social types of contacts, and " * * * her ability to really put things together, try to cope even with the day to day concerns would be poor * * *."

In *Hudson v. Owens*, Ky., 439 S.W.2d 565, we said:

> " * * * The assessment of occupational disability is a factual determination and is a legal concept. Functional disability is a medical concept. Causation in these heart attack cases is a factual determination based on a legal concept for the purpose of determining whether or not the work shall be deemed as the legal cause of the disability or as only the stage on which the inevitable tragedy occurred, so that the cardiac disability is merely coincidental with, rather than legally caused by, the work-connected event."

■ The board is the sole finder of facts in compensation proceedings, and when such facts are based on substantial evidence, they are conclusive and binding on this court. *Armco Steel Corporation v. Mullins*, Ky., 501 S.W.2d 261.

■ There is substantial evidence in the record that claimant suffered a harmful change in the human organism which was work related.

Next, appellant questions whether claimant's personality makeup or structure was a dormant nondisabling disease or condition within the meaning of KRS 342.120.

■ KRS 342.120 was amended by the 1972 regular session of the General Assembly to clarify a controversial situation. Pri-

or to the amendment, this statute, in subsection (1)(b), used the explanation "dormant non-disabling disease condition" and in subsection (4) talked about "disability resulting from a dormant disease aroused." The amendment changed subsection (1)(b) by inserting the disjunctive "or" between the words "disease" and "condition". In subsection (4) the amendment added the words "or condition" after the word "disease". There is no room for doubt that the statute now refers to a condition separate and apart from a disease.

■ Dr. Ehrman reported that claimant had a dormant non-disabling condition. Dr. Kodman described the condition as an anxiety neurosis that has gradually increased into severity over the past ten years. The medical testimony is sufficient on which the board could rest a finding of fact. The board found that Mrs. Pierce, prior to February 6, 1973, had " * * * a dormant non-disabling disease *or condition* which was aroused or brought into disabling reality to the extent of 20% occupationally to the body as a whole. This portion falls upon the Special Fund." We agree.

■ Finally, the Special Fund argues that it has no liability because the claimant's disability is not the result of a subsequent injury by accident. It attempts to differentiate liability as fixed on the employer by KRS 342.610 and 342.620 and that which attaches to the Special Fund by KRS 342.120. It argues that since liability on the Special Fund is predicated on injury by accident or disease, there can be no liability placed on the Special Fund if it is only shown that there was a work-related harmful change in a human organism. In other words, the Special Fund argues that there must be some physical trauma associated with the disabling event.

This court treated the words "accident", "accidental cause", and "accidental result" in *North American Refractories Company v. Jackson*, Ky., 346 S.W.2d 10, and arrived at the following conclusion:

"* * * we hold that, if there is medical testimony that the strain of the employee's work-connected exertions caused him bodily harm, the injury is accidental within the meaning of KRS 342.005(1). * * *"

In *Hudson v. Owens*, supra, this court expressed its concern with exercises in semantics over the word "accidental" and stated as follows:

"In short, a fortuitous unexpected injury to the workman, traceable to the performance of his work, is sufficient to provide the accidental quality demanded by our compensation statute."

An excellent discussion of the justification for an award of workmen's compensation for a nervous condition resulting from assembly line work may be found in *Carter v. General Motors Corporation*, 361 Mich. 577, 106 N.W.2d 105 (1960).

There is substantial evidence to support the conclusion that Mrs. Pierce's injury was the unexpected result of the performance of her duties.

The judgment is affirmed.

All concur, except REED, C. J., who concurs in result only.