**Patrick J. DELANEY, Appellant,**

v.

**ALASKA AIRLINES, and Industrial Indemnity Company of Alaska, Inc., and State of Alaska Workers' Compensation Board, Appellees.**

**No. S–226.**

Supreme Court of Alaska.

Jan. 25, 1985.

Chancy Croft, Anchorage, for appellant.

James A. Sarafin, Hagans, Brown & Gibbs, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, Justices.

OPINION

MOORE, Justice.

## I. FACTS

This case involves a claim for workers' compensation benefits by Patrick J. Delaney. Delaney was employed as a pilot by Alaska Airlines from 1966 until April 1, 1976. In October 1971 it was discovered that Delaney had Crohn's disease, a chronic inflammation of the ileum. The cause of the disease is unknown. In Delaney's case the symptoms included bowel obstruction, intestinal bleeding and stomach upset.

Crohn's disease is usually treated by surgical resection of the affected region of the colon. In many cases surgery provides only a respite, followed by a recurrence of the disease. Delaney had surgery in October 1971, but his symptoms returned about a year later.

After the operation, Delaney maintained a full flight schedule until April 1, 1976, despite the recurrence of his symptoms. On that date, the Federal Aviation Administration (the FAA) revoked Delaney's flight certification because the medication prescribed for the control of his disease violated FAA regulations. Delaney claims to be permanently and totally disabled as a result of Crohn's disease.

On May 1, 1979, the Alaska Workers' Compensation Board (the board) held a hearing on Delaney's claim for workers' compensation benefits. The board denied Delaney's claim on April 3, 1980. On appeal, the board's decision was affirmed by the superior court. Delaney then appealed to this court. We now affirm.

## II. DISCUSSION

Delaney makes two contentions on appeal. First, Delaney claims that Crohn's disease is an occupational disease of airline pilots caused by excessively stressful conditions. In *Aleutian Homes v. Fischer*, 418 P.2d 769, 777 (Alaska 1966), we defined an occupational disease:

> We hold that *if a disease is caused by the conditions of employment* and these conditions carry with them a *risk of incurring the disease greater than that which prevails in employment and living conditions in general,* then such disease is an occupational disease within the scope of our act.

(Emphasis added). Thus, in order to succeed, a disabled employee claiming an occupational disease must prove two facts: (1) that his disease was caused by the conditions of his employment; and (2) that as a result of those working conditions, the risk of his contracting the disease was greater than that which generally prevails in employment and living conditions. In proving these facts a claimant is aided by the presumption of compensability found in AS

23.30.120.[1] We have held that a disability is presumed to be compensable when a claimant has established a "preliminary link" between his disability and his employment. *Burgess Construction Co. v. Smallwood,* 623 P.2d 312, 316 (Alaska 1981). In *Burgess Construction Co. v. Smallwood,* 623 P.2d 312, 316 n. 4 quoting 1 A. Larson, *Workmen's Compensation Law* § 10.33 at 121, we described the purpose of the preliminary link requirement:

> Apparently, the idea is to rule out cases in which claimant can show neither that the injury occurred in the course of employment nor that it arose out of it, *as where he contracted a disease but has no evidence to show where he got it.*

To recover compensation benefits for an employment related disability, a disabled employee must establish a preliminary link. In *Smallwood,* we also noted with regard to the preliminary link, that in " 'claims based upon highly technical medical considerations' medical evidence is often necessary in order to make that connection." *Id.* at 316.

Since Delaney is suffering from a rare and complicated disease, expert medical testimony was required to establish the preliminary link in his case. Delaney's only medical expert was Dr. Gilbert Schaller, his treating physician. Dr. Schaller testified that the cause of Crohn's disease is unknown to the medical profession. He testified that there was no way of knowing when Delaney had contracted Crohn's disease, but suggested that it had been present since at least 1968, only two years after Delaney began flying for Alaska Airlines. Dr. Schaller never stated that Delaney's disease was originally caused by the conditions of his employment with Alaska Airlines. Nor did he testify that airline pilots suffer from Crohn's disease to a greater extent than the public at large.

■■ Since Dr. Schaller admitted that the cause of Crohn's disease is unknown and could not say when or why Delaney contracted the disease, we must conclude that Dr. Schaller's testimony did not establish a preliminary link between Delaney's employment and his disease. Delaney's first claim fits squarely within Professor Larson's definition of a case barred by the preliminary link requirement.

■■ Delaney's second claim is that his employment as an Alaska Airlines' pilot aggravated his preexisting Crohn's disease. In *Thornton v. Alaska Workers' Compensation Board,* 411 P.2d 209, 210 (Alaska 1966), we held that a preexisting disease does not rule out compensation if employment aggravated, accelerated or combined with the disease to produce disability. However, the employment must have been a substantial factor in bringing about the disability. *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 598 (Alaska 1979).

■■ In support of Delaney's second claim, Dr. Schaller testified that Delaney's employment by Alaska Airlines from 1971 through 1976 contributed to his disability in 1976. We believe that Dr. Schaller's testimony established a preliminary link between Delaney's employment and the aggravation of his disease. Therefore, Alaska Airlines was required to rebut the presumption of compensability. The presumption may be overcome only by substantial evidence that the injury is not compensable. *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1046 (Alaska 1978). Once the employer produces substantial evidence to rebut the presumption, the presumption drops out. The board must then weigh all of the evidence. The burden of proof as to each element of the claim is on the claimant. *Id.* at 1049. We have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as

---

**1.** AS 23.30.120 provides in part:

In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that

(1) the claim comes within the provisions of this chapter;

adequate to support a conclusion." *Id.* at 1046.

Dr. Peter Fisher, a board certified internist, testified on behalf of Alaska Airlines. Dr. Fisher testified on the basis of his extensive experience as a practitioner of internal medicine and his research concerning the Crohn's disease process undertaken in preparation for his testimony. When asked whether stress could cause or aggravate the Crohn's disease condition, Dr. Fisher responded, "stress is not known to be, has never proved to be, and is likely not an important factor in the disease process." He agreed that it would be "pure speculation" to suggest that stress is an aggravating factor in the Crohn's disease process. He was careful however, to distinguish between stress as a medical cause of aggravation of the underlying disease process and stress as a symptomatic reaction. When asked whether stress might be found to be a contributing factor in the aggravation of Crohn's disease, Dr. Fisher stated:

> I can not dispute a general statement that stress may be found to be a factor [in the Crohn's disease process] because I think stress is a factor in everything we do and in all illnesses and in all walks of life, as a general statement. I'm referring to stress being a primary factor or a causative factor. In that reference I feel certain that it will not [be found to be a factor]....

We were confronted with an analogous factual situation in *Miller v. ITT Arctic Services,* 577 P.2d 1044. Miller collapsed at work while loading a toolbox onto a pickup truck. His collapse and subsequent death were due to a ruptured berry aneurism in his brain. Miller's beneficiaries claimed that the aneurism ruptured as a result of Miller's physical exertion just before his collapse. Three physicians testified about the cause of Miller's death. Only one expert, Dr. Wilson, categorically denied the existence of a relationship between Miller's exertion and the rupture of the aneurism. Nevertheless, we held that Dr. Wilson's categorical statement, based upon accurate and complete information and not undercut by other evidence produced by the employer, was sufficient to overcome the presumption. 577 P.2d at 1048.

■ Likewise, in the present case, we believe that Dr. Fisher's unequivocal expert testimony, based upon his experience and recent research, is substantial evidence that occupational stress was not a substantial factor in the aggravation of Delaney's disease. Therefore, the burden was on Delaney to prove all the elements of his case before the board.

■ The board concluded that Delaney failed to meet his burden. According to the board, Delaney produced "no definitive evidence which demonstrates by a preponderance that the applicant's employment aggravated, accelerated or combined with the already existing condition to create the disability." In reviewing the board's decision, we must determine whether the board's findings are supported by substantial evidence in light of the whole record. *Beauchamp v. Employer's Liability Assurance Corp.,* 477 P.2d 993, 997 (Alaska 1970). Our task is not to independently reweigh the evidence, but to determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion.[2] *Miller v. ITT Arctic Services,* 577 P.2d at 1046.

2. In *Keiner v. City of Anchorage,* 378 P.2d 406 (Alaska 1963), we first adopted the requirement of substantial evidence in light of the whole record to support an administrative fact finding. That standard had been upheld in federal cases subject to the Administrative Procedure Act. In *Keiner,* we cited *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950), for that requirement. In *Universal Camera,* Justice Frankfurter, writing for a unanimous Court, stated:

> Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fair-

Delaney relied entirely upon his own testimony and that of Dr. Schaller to prove his case. Delaney's own testimony related primarily to his duties as a pilot and the progression of his symptoms.

██ At the hearing Delaney voiced some complaints about poor meals and accommodations, nonscheduled flights, aircraft without adequate pressurization and poor weather and landing conditions. However, upon examination by the board, Delaney admitted that his complaint about meals and accommodations related to only one incident, that he flew nonscheduled flights during only four of his ten years as an Alaska Airlines pilot, that he flew only the standard number of hours monthly, and that he flew in a well-pressurized Boeing 727 since late 1972. In addition, when asked what factors in his job he considered stressful, Delaney prefaced his answer by stating: "Well, I suppose the same with any pilot." From Delaney's testimony, the board was entitled to conclude that he was a "usual" pilot and not subject to "unusual" stress not shared by others in his profession.

Dr. Schaller testified that Delaney's occupational stress caused an aggravation of his disease. However, Dr. Schaller's testimony may have been undercut by Dr. Fisher's testimony and the undisputed fact that the basic cause of Crohn's disease is unknown. The board might also have concluded that Dr. Schaller's testimony was weakened by other testimony elicited from him on cross-examination. Specifically, Dr. Schaller testified on cross-examination that:

[Delaney] has a lot of family problems, and I think these aggravate his condition

as well as say the physical stress of flying and his desire to get back to flying where he couldn't and so forth, and I think that stress is diet. I think stress is interpersonal relationships. I think it is the emotional sense. I think it is inter-makeup of [Delaney's] volatile high strung individual. I think all of the things accumulate into the course of this, and this is often the makeup of the people who have this disease.

Dr. Schaller also stated that in his opinion Delaney's disease would have progressed the same had he been a physician or an attorney. In fact, Dr. Schaller testified that Delaney's chances of avoiding a recurrence were only somewhat better than 50% even if he had retired from full-time flying after his operation. Dr. Schaller's opinion in this regard was confirmed in a letter written to him by Dr. Beech Barrett, a Crohn's disease specialist who examined Delaney after his 1971 operation.

██ In sum, Dr. Schaller identified several sources of significant stress in Delaney's life other than occupational stress, and stated that a recurrence of Delaney's Crohn's disease after his operation would not have been unlikely even had Delaney quit flying at that time. The board could reasonably have believed that these statements by Dr. Schaller undercut his testimony that occupational stress was a substantial factor causing an aggravation of Delaney's underlying disease. In addition, the board may have had difficulty reconciling Dr. Schaller's opinion with the fact that stress has not been found to be a cause of Crohn's disease.

██ Dr. Fisher's testimony, on the other hand, was unequivocal, and was

---

ly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record....

. . . . .

To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not ... mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views even though the court would justifiably have made a different choice had the matter been before it de novo. Congress

has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view. 340 U.S. 487–90, 71 S.Ct. 464–66; 95 L.Ed. 467–68. The test described by Justice Frankfurter is the test we apply when reviewing administrative fact findings.

based upon Dr. Fisher's recent medical research and significant experience as a board certified internist. Moreover, the board decided that Dr. Fisher's testimony was consistent with the fact that the cause of Crohn's disease is unknown. Thus, in light of the contrary evidence, it was not unreasonable for the board to rely on Dr. Fisher's testimony.[3] Without independently weighing the evidence, we find that the record contains substantial evidence upon which a reasonable mind might rely in concluding that Delaney's Crohn's disease was not aggravated by his employment as an Alaska Airlines pilot.

AFFIRMED.

---

3. Even if Dr. Schaller's testimony had been consistent and unequivocal, we believe the board would have been entitled to rely on Dr. Fisher's testimony in this case. It is the province of the board to weigh witnesses' credibility and competing inferences from the testimony. The board's decision will be reversed only if the evidence upon which the decision relies does not reasonably support it, in and of itself, or in light of contrary evidence in the record.