Corazon FOX, Appellant,

v.

ALASCOM, INC., Appellee.

No. S–482.

Supreme Court of Alaska.

May 9, 1986.

Ernest N. Rehbock, Rehbock & Rehbock, Anchorage, for appellant.

Marilyn E. Bain, Vancouver, Wash., for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This case involves an employee who suffered a mental disability allegedly due to non-traumatic, gradual work-related stress. The Workers' Compensation Board held that in order to recover benefits in this situation the employee must make a preliminary showing that the on-the-job stress she experienced was greater than the stress which all employees experience. We hold that under the Workers' Compensation Act the board erred in imposing such a requirement.

FACTS.

Appellant Corazon Fox was hired by appellee Alascom, Inc. in October, 1974, as a Senior Clerk Typist in the field installation department. Her duties included processing weekly time reports, making travel arrangements, requisitioning supplies, keeping business expense reports, distributing payroll checks, answering the telephone, distributing mail, typing, and filing. In April, 1979, she was transferred to the traffic administration department as a clerk. Her duties in this job included processing weekly time reports, verifying absences, balancing the bi-weekly payroll, doing fill-in secretarial work, typing, and obtaining supplies. Fox continued at this job until she left work in February, 1982.

Fox experienced many medical problems during her years at Alascom. These problems became particularly acute during 1977 and 1980 after the Caesarean birth of her second child. Among these problems were a variety of physical ailments to which no physical cause could be found, such as pains in her legs and breathing difficulties. Fox also experienced irritability and an inability to concentrate.

Fox continued experiencing these problems through 1982. During this time she was seeing a physician, Dr. Wilder, who could not find a physical cause for her complaints and who advised her to see a psychologist. On February 1, 1982, Fox went to Dr. Wilder on an emergency basis, stating that if she had not left work a few moments before she probably would have had a complete nervous breakdown. Fox was placed in a "sick leave" category where she apparently remained until she was terminated in September, 1982.

Fox filed a workers' compensation claim against Alascom for temporary total disability benefits, medical expenses, vocational rehabilitation costs, and attorney's fees and costs. Fox alleged that she had "suffered a nervous breakdown due to stresses and pressures placed upon her in the course of her employment." The board held a hearing on May 5, 1983. The evidence before the board consisted of a variety of medical reports, Fox's deposition, the deposition and reports of Dr. Robert Ohlson, Ph.D., a psychologist who interviewed Fox several times in early 1983, and the

testimony at the hearing of several Alascom employees.

The evidence before the board clearly indicated that Fox perceived her job with Alascom as the source of her physical and emotional problems. Fox attributed her problems solely to her job and denied that she experienced stress from other events in her life such as the Caesarean birth of her child and financial difficulties. Fox also stated that even though she was no longer employed by Alascom her present stress was caused by memories of her job there. Fox felt that stress from the job emanated from not being told what was expected of her and from being treated unequally. Among Fox's more specific complaints were that her supervisors talked behind her back; she was denied requests to take several hours off for personal business; she was the last one to know about her transfer to another department; she had many rush jobs; her supervisors refused to move a filing cabinet closer to her desk; and she was required to answer the phones during lunch.

Fox's three supervisors testified at the hearing. They stated that Fox was good at her job and received regular merit pay increases. They also stated that they did not feel their relationship with Fox was stressful or tense, and they did not believe her job was stressful. They also stated that they did not talk about her behind her back nor fail to tell her what was expected of her. The woman who replaced Fox and worked at her position for ten months testified that in her opinion the job was not stressful and that her personal relationship with her supervisor was neither stressful nor tense.

The major medical evidence upon which the board relied was provided by Dr. Ohlson. Dr. Ohlson indicated that Fox's exact diagnosis was unclear but that her symptoms resembled a "conversion disorder," a "psychogenic pain disorder" or a "somatization disorder." Dr. Ohlson made clear that in his opinion Fox was not malingering and that in Fox's mind her job with Alascom was the only source of her stress.

This conclusion was not disputed by Alascom.

Dr. Ohlson indicated that Fox's work-relationships had created a great deal of stress for her. However, he also indicated that there were many other non-employment factors in Fox's life that were more likely to be the "real sources" of stress. One of these factors was that Fox's husband had been unemployed since 1975, thereby forcing a reversal in expected roles, with Fox becoming the family's main provider. Another factor which Dr. Ohlson felt would be very stressful was that Fox and her husband experienced great financial difficulties, eventually having to declare bankruptcy. Other likely sources of stress were the Caesarean births of her children, her difficulties in caring for them, and surgery which Fox had for the removal of an ovary.

Dr. Ohlson stated that these other factors rated higher as sources of stress on a "Social Re-adjustment Rating Scale" than did "trouble with the boss." Dr. Ohlson acknowledged that the fact that an item rated lower or did not appear on the scale did not necessarily preclude it from being stressful to a given individual. Dr. Ohlson felt, however, that Fox's difficulties would have developed if she had never worked at Alascom:

[I]n my opinion, the condition would have developed no matter where she worked. Just the experience of having to work with all the other kinds of things that were going on in her life would have caused the same kinds of stresses.

Fox, however, denied that these other factors were stressful to her and attributed all her stress to her job at Alascom. In Dr. Ohlson's view this denial was a defense mechanism against intense feelings which would normally be expected from the other factors.

On July 27, 1983, the board issued a Decision and Order denying Fox's claim. The board stated that under the Alaska Workers' Compensation Act "it is presumed that an injury is compensable in the absence of substantial evidence to the con-

trary." The board next stated, quoting this court in *Burgess Construction Co. v. Smallwood, (Smallwood II)* 623 P.2d 312, 316 (Alaska 1981), that "before the presumption attaches, some preliminary link must be established between the disability and the employment." The board stated that in order for this preliminary link to be established the claimant had to show that "the employment situation produces mental stress and tension greater than all employees must experience."

The board held that the preliminary link had not been established in this case. The board found that none of the testimony indicated that work related stress was greater than that which all workers must experience and was not a substantial factor in causing Fox's disability. The board stated that "[h]aving to work is something all employee [sic] must do. Therefore, the stress of having to work is not greater than the stress all employees experience." Since the preliminary link had not been established the presumption did not attach. Therefore Fox had to prove all the elements of her claim and the board concluded that she had not done so.

Fox appealed the board's decision to the superior court. The court upheld the decision, holding in part that the "greater than all employees must experience" requirement was consistent with AS 23.30.-265(17)'s definition of "injury" as "arising out of and in the course of employment." The superior court was of the further view that the requirement was consistent with the board's own prior decisions and "with the trend nationally to use objective standards for determining work-relatedness in mental disability claims." The court also rejected Fox's argument that the test should focus on the claimant's "honest perception" of whether the employment was the source of the injury. The superior court concluded that the record fully supported the board's finding that Fox had not proved that "work stress" was a substantial factor in creating her emotional disability. Fox appealed to this court.

DISCUSSION.

A. *Introduction*

AS 23.30.120(a)(1) provides that it is presumed that a claim for compensation comes within the coverage of the Workers' Compensation Act unless there is "substantial evidence to the contrary." We have held that before this presumption attaches,

> some preliminary link must be established between the disability and the employment, and ... in claims 'based on highly technical considerations' medical evidence is often necessary to make that connection.

*Smallwood II,* 623 P.2d at 316.

The purpose of requiring this preliminary link is to rule out cases in which the claimant can show neither that the injury occurred in the course of employment nor that it arose out of it. *See Smallwood II,* 623 P.2d at 316. Such a requirement is necessary under AS 23.30.265(17) which defines "injury" as "accidental injury or death arising out of and in the course of employment."

The "arising out of" requirement is present in all workers' compensation statutes. The requirement is essential to the political compromise behind the statute whereby the employer bears the initial cost of injuries that arise from employment related risks, regardless of "fault," and the employee surrenders his common-law right to sue in tort when an employment related risk creates his injury. *See* L. Joseph, *The Causation Issue in Workers' Compensation Mental Disability Cases: An Analysis, Solutions, and a Perspective,* 36 Vand.L.Rev. 263, 280 (1983). The requirement reflects the primary "policy" or "legal" causation formula by holding employers responsible only for compensating employment related risks. *Id.* at 283.

There is an inherent difficulty, however, in determining whether a mental disorder "arises out of" employment. The problem is simply that "the body of knowledge regarding mental or emotional injuries is not certain enough to make rational determina-

tions as to the true nature, extent and cause of injury." S. Sersland, *Mental Disability Caused by Mental Stress: Standards of Proof in Workers' Compensation Cases*, 33 Drake L.Rev. 751, 752 (1983–84).

As another commentator put it:

The precise etiology of most mental disorders is inexplicable. Mental disorders result from an extraordinarily complex interrelation between an individual's internal or subjective reality and his external or environmental reality ... The precise psychogenesis of an individual's subjective reality is impossible to determine. Moreover, the interrelation between subjective and environmental realities is so profoundly complex that no method exists either to quantify or qualify the extent to which one reality and not the other is a cause of mental disorder. Therefore, the time lapse between an external stress and the manifestation of mental disorder symptoms, and the intensity, suddenness, or gradualness of the external symptoms are irrelevant in determining cause ... When mental disorder symptoms appear in parts of the body other than the brain, medical science is able, in most cases, to attach a quantitative or qualitative etiological probability. Scientists cannot make this determination, however, when the symptoms manifest themselves subjectively. An individual who suffers a mental disorder has an *a priori* personal subjective vulnerability or predisposition to the disorder.

Joseph, 36 Vand L.Rev. at 271–72 (footnotes omitted); *See also* Sersland, Drake L.Rev. at 752–58; Comment, *Workmen's Compensation Awards for Psychoneurotic Reactions*, 70 Yale L.J. 1129 (1961).

It is this inherent difficulty in proving causation that has led courts in many jurisdictions to impose additional definitional limits on the compensability of mental injury caused by mental stress by looking "objectively" at the type and/or degree of the stress. Some jurisdictions have held that mental injuries are not compensable unless there is some "physical element" involved or unless the mental stimulus is a "sudden," "traumatic" event or a series of such events. *See Hanson Buick v. Chatham*, 163 Ga.App. 127 292 S.E.2d 428, 429–30 (1982); *Albanese's Case*, 378 Mass. 14, 389 N.E.2d 83, 86 (1979). *See generally* Sersland, 33 Drake L.Rev. at 759–67, 767–72; 1B A. Larson, Workmen's Compensation Law §§ 42.23, 42.23(a) at 7–647—7–661 (1986). Some jurisdictions have held that mental injury caused by gradual mental stress is compensable, but only if the employee shows that he was subject to mental stress and tension "greater than all employees must experience." *See, e.g., Sloss v. Industrial Commission*, 121 Ariz. 10, 588 P.2d 303, 304 (1978); *Townsend v. Maine Bureau of Public Safety*, 404 A.2d 1014, 1020 (Me.1979); *Seitz v. L & R Industries, Inc.*, 437 A.2d 1345, 1351 (R.I. 1981); *Jose v. Equifax, Inc.*, 556 S.W.2d 82, 84 (Tenn.1977); *School District #1 v. Dept. of Industry, Labor and Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974).

### B. *The "Greater Than All Employees Must Experience" Test.*

The Board applied the "greater than all employees must experience" test in this case. Courts that have adopted this test have often expressed a fear that due to the difficulty in determining the causes of mental illness, failure to impose additional objective requirements would "open the flood gates" to fraudulent mental injury claims. *E.g., School District #1*, 215 N.W.2d at 377. Courts also often state that worker's compensation acts were not designed to make employers "general insurers," which could happen if there were no objective threshold requirements, since some causal connection between the mental illness and employment could be established in most cases. *E.g., Townsend*, 404 A.2d at 1018–19. Alascom argues that the "greater than all employees must experience" test is appropriate to ensure that the injury "arise out of" employment by providing that there is some objective, realistic, connection between the injury and the employment.

While we recognize these concerns, we reject the "greater than all employees must experience" test, or any other additional "objective" threshold requirement, for several reasons.

First, we are unconvinced that *requiring* a showing of stress greater than all employees must experience will make it more likely that employment was a contributing cause of the mental injury.

> The existence of a mental impact stimulus or unusual excessive mental employment stresses, however, does not medically assure the genuineness of the causal relationship between a worker's mental disability and his employment any more than does the existence of a physical impact. The intensity of the mental stresses is etiologically irrelevant. The metaphorical description of the threshold limitations by courts as "sufficient badge[s] of reliability", therefore, is accurate: like the objective criteria in tort actions for emotional injury, these "badges" at best assure the *appearance* of an objective causal relation.

Joseph, 36 Vand.L.Rev. at 305 (emphasis in original) (footnotes omitted); *see* Comment, 70 Yale L.J. at 1138–45. We therefore think that the "greater than all employees must experience" test is neither essential nor even germane to the legislative requirement that the injury "arise out of" the employment.

Second, we believe the argument that threshold requirements are necessary for mental injuries because such injuries are easier to feign than physical injuries is unsubstantiated. There is no evidence that it will be easier to feign or more difficult to detect complex patterns of psychoneurotic reactions than certain "physical" injuries. *See* Comment, 70 Yale L.J. at 1137.

Finally, and most importantly, we think that adoption of the "greater than all employees must experience" requirement is contrary to the fundamental principle in workers' compensation law that the Act should be read liberally and that the employer must take the employee "as he finds him." *See, e.g., S.L.W. v. Alaska Work-men's Compensation Board,* 490 P.2d 42, 44 (Alaska 1971); *Wilson v. Erickson,* 477 P.2d 998, 1000 (Alaska 1970). There will be employees who will suffer mental injuries from "usual," "everyday," employment stresses. Under this requirement these "eggshell" employees would not be compensated for their injuries, because the stress to which they succumbed was a stress to which the average worker would not have succumbed.

Several jurisdictions have rejected the "greater than all employees must experience" requirement on the explicit or implicit grounds that the employer must take the employee as he finds him, and that there is nothing in the workers' compensation statute that implies there should be any different rule for mental illness. *See Royal State National Insurance Co. v. Labor & Industrial Relations Appeal Board,* 53 Hawaii 32, 487 P.2d 278, 282 (1971); *Yocom v. Pierce,* 534 S.W.2d 796, 798–800 (Ky.1976); *Breeden v. Workmen's Compensation Comm'r,* 285 S.E.2d 398, 400 (W.Va.1981); *McGarrah v. SAIF,* 296 Or. 145, 675 P.2d 159, 167 (1983); *Albertson's, Inc. v. Workers' Compensation Appeals Bd. of State of California,* 131 Cal.App.3d 308, 182 Cal.Rptr. 304, 307 (1982).

We agree with these decisions. "Greater stress than all employees must experience" does not insure that the injury "arises out of employment." While no "test" can adequately insure this, we have not imposed additional threshold requirements in physical injury cases where it was difficult to determine whether employment was a causal factor. *See, e.g., Providence Washington Insurance Co. v. Bonner,* 680 P.2d 96 (Alaska 1984). In *Delaney v. Alaska Airlines,* 693 P.2d 859 (Alaska 1985), a pilot who had Crohn's disease claimed compensation. We rejected Delaney's claim that Crohn's disease was an occupational disease of airplane pilots caused by excessively stressful conditions because there had been no medical testimony that the disease had originally been caused by conditions of employment. *Id.* at 862. Therefore the preliminary link between the ill-

ness and the employment had not been established. We then stated that the "preliminary link" had been established as to whether the employment conditions aggravated, accelerated or combined with a preexisting disease to produce disability. *Id.* at 863. We held, however, that the employer had produced "substantial evidence" that employment stress was not a contributing factor, based on unequivocal expert testimony, and therefore had rebutted the presumption of compensability. *Id.* at 863.

While ultimately rejecting the employee's claim in *Delaney*, we did not vary from the traditional analysis even though the question of whether the employment contributed to the injury was novel and difficult. We see no reason to vary from the traditional analysis in mental injury cases by imposing additional requirements on the quality or quantity of employment conditions. No legal approach can be entirely accurate in this area because there is insufficient scientific knowledge regarding what actually causes mental disorders. The creation of additional requirements that do not necessarily bear on whether there is a connection between the injury and the employment, and which per se exclude a class of claimants from legislatively directed compensation coverage, is not the way to deal with this reality.

### C. *The "Honest Perception" Test*

Fox urges us to adopt the approach taken in *Deziel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W.2d 1 (1978). In *Deziel* the court adopted a "strictly subjective" causal nexus to determine compensability. Under this standard:

> [A] claimant is entitled to compensation if it is factually established that claimant *honestly perceives* some personal injury incurred during the ordinary work of his employment "caused" his disability. This standard applies where the plaintiff alleges a disability resulting from either a physical or mental stimulus and honestly, even though mistakenly, believes that he is disabled due to that work-related

injury and therefore cannot resume his normal employment.

*Id.* 268 N.W.2d at 11 (emphasis in original).

The court stated that this test was appropriate because psychoneuroses were, by definition, subjective injuries and disabilities existing only in the minds of their victims. The court viewed the "honest perception" test as reflecting the central fact that the mentally ill claimant was "mismanufacturing" or misperceiving reality. *Id.* at 12. The court also stated that the workers' compensation act should be construed liberally and that "[c]ompensation for disability takes preference over any subsidiary doubts about the existence of an objective causal nexus." *Id.* at 15.

We decline to adopt the "honest perception" test because we believe it is fundamentally inconsistent with the statutory requirement that the injury "arise out of" the employment. The "honest perception" approach does not take into account the fact that objective, environmental realities, such as employment, may or may not contribute to the disability. *See* Joseph, 36 Vand.L. Rev. at 308–09. While it is true, as a general policy preference, that remedial legislation should be construed liberally, this does not give us license to ignore the statutory directive. The "arising out of" requirement is the legislature's primary means of limiting compensation to employment related risks. A test that focuses exclusively upon the employee's honest perception ignores the statutory directive because it does not ask whether the mental injury arose from an employment related risk nor does it even look to whether an employee's subjective reaction to work stresses actually contributed to the injury. Under this test, even if the subjective reaction of a predisposed or "eggshell" employee did not contribute to the employee's injury, the injury would still be compensable if the employee "honestly perceived" that his job caused the injury.

The dissent in *Deziel* pointed out that this scenario could occur often since it is very likely that a claimant would "per-

ceive" his employment as the cause of his disorder:

> [F]or a neurotic state to exist, ... the person must be unable or unwilling to recognize and resolve these [inner conflicts and emotional weaknesses]. The disorder is an unconscious attempt at resolution. The only possible causative factor of which the claimant is, or will allow himself to be, consciously aware is the work-related trauma. Reality is elusive. It is, therefore, highly unlikely that the claimant's perception of causation will be anything but his employment.

268 N.W.2d at 24.

### D. The "Preliminary Link"

▪ We conclude that this case should be analyzed in the same way as any other claim for workers' compensation benefits. We are not alone in treating a claim for mental injury caused by gradual mental stress in the same manner as any other workers' compensation disability claim. *See Royal State National Insurance Co. v. Labor & Industrial Relations Appeal Board*, 53 Hawaii 32, 487 P.2d 278 (1971); *Yocom v. Pierce*, 534 S.W.2d 796 (Ky.1976); *McGarrah v. SAIF*, 296 Or. 145, 675 P.2d 159 (1983); *Breeden v. Workmen's Compensation Comm'r*, 285 S.E.2d 398 (W.Va. 1981). The "preliminary link" and presumption of compensability is established if there is evidence that the employment contributed to the injury. *See Bonner*, 680 P.2d at 99. The fact that the employee perceives employment as the source of the injury is not enough to establish the preliminary link unless there is some testimony that the employment affected the employee to help create the disability. As one court put it, there must be some evidence that the employment played an "active role" in the development of the mental disability and did not "merely provide a stage for the event." *Albertson's, Inc. v. Workers' Compensation Appeals Bd. of State of California*, 131 Cal.App.3d 308, 182 Cal. Rptr. 304, 309 (1982).

▪ Here the evidence establishes a preliminary link between the employment and the disability. While Dr. Ohlson indicated that in his opinion there were a variety of factors more likely to produce stress in Fox, he also stated that "[Fox's] relationship with fellow workers and supervisors at Alascom has evidently produced a tremendous amount of stress in her." Dr. Ohlson also stated that Fox's employment with Alascom was a factor causing stress although he though it was not the exclusive nor precipitating factor.

In order to establish the preliminary link necessary for the presumption of compensability the claimant need not present substantial evidence that his or her employment was a substantial cause of his disability. Such a showing would be necessary only if the employer had rebutted the presumption of compensability. *See Bonner*, 680 P.2d at 98. The record contains evidence that the employment was a factor in creating Fox's disability. This is enough to establish the presumption of compensability. On remand, Alascom may rebut the presumption by presenting substantial evidence that Fox's disability was not work-related through (1) affirmative evidence that the disability was not work-related, or (2) elimination of all reasonable possibilities that the injury was work connected. *Burgess Construction Co. v. Smallwood (Smallwood III)*, 698 P.2d 1206, 1211 (Alaska 1985). If Alascom does rebut the presumption then Fox will have to prove all the elements of her claim by a preponderance of the evidence. *Id.* at 1211.

REVERSED and REMANDED for proceedings consistent with this opinion.