**Corazon FOX, Appellant,**

v.

**ALASCOM, INC., and Alaska Worker's Compensation Board, Appellees.**

No. S–2931.

Supreme Court of Alaska.

Dec. 8, 1989.

Ernest Z. Rehbock, Rehbock and Rehbock, Anchorage, for appellant.

Marilyn E. Bain, Vancouver, Wash., for appellee Alascom, Inc.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION AND ISSUES PRESENTED FOR REVIEW.

In *Fox v. Alascom, Inc.* ("*Fox I*"), 718 P.2d 977 (Alaska 1986), this court reversed the decision of the superior court affirming the decision of the Alaska Workers' Compensation Board ("the Board") denying Fox's claim on the basis that she had not established the necessary "preliminary link" between her employment and her disability. *Id.* at 980, 984. Upon remand, the Board denied the employee's claim on the basis that it was untimely, and the superior court affirmed. Fox, in this second appeal, alleges the following errors:

1. The Board and the superior court erred in denying the employee's claim on a basis that was not raised in the prior appeal.

2. The Board and the superior court erred in holding that the employee's claim was barred by the two-year statute of limitations provided by AS 23.30.105.

3. The Board and the superior court erred in holding that the employee's claim was barred for lack of timely notice to the employer as required by AS 23.30.100.

## II. FACTS AND PROCEEDINGS.

Most of the relevant facts and proceedings are set forth in this court's prior opinion:

This case involves an employee who suffered a mental disability allegedly due to non-traumatic, gradual work-related stress. . . .

FACTS.

Appellant Corazon Fox was hired by appellee Alascom, Inc. in October, 1974, as a Senior Clerk typist. . . . In April 1979, she was transferred to the traffic administration department as a clerk. . . . Fox continued at this job until she left work in February, 1982.

Fox experienced many medical problems during her years at Alascom. These problems became particularly acute during 1977 and 1980 after the Caesarean birth of her second child.[1] Among these problems were a variety of physical ailments to which no physical cause could be found, such as pains in her legs and breathing difficulties. Fox also experienced irritability and an inability to concentrate.

Fox continued experiencing these problems through 1982. During this time she was seeing a physician, Dr. Wilder, who could not find a physical cause for her complaints and who advised her to see a psychologist. On February 1, 1982, Fox went to Dr. Wilder on an emergency basis, stating that if she had not left work a few moments before she probably would have had a complete nervous breakdown. Fox was placed in a "sick leave" category where she apparently remained until she was terminated in September, 1982.

Fox filed a workers' compensation claim against Alascom [on November 30, 1982 for temporary total disability benefits, medical expenses, vocational rehabilitation costs, and attorney's fees and costs. Fox alleged that she had "suf-fered a nervous breakdown due to stresses and pressures placed upon her in the course of her employment. . . ."

. . . .

The major medical evidence upon which the board relied was provided by Dr. Ohlson. Dr. Ohlson indicated that Fox's exact diagnosis was unclear but that her symptoms resembled a "conversion disorder," a "psychogenic pain disorder" or a "somatization disorder." Dr. Ohlson made clear that in his opinion Fox was not malingering and that in Fox's mind her job with Alascom was the only source of her stress. This conclusion was not disputed by Alascom.

Dr. Ohlson indicated that Fox's work-relationships had created a great deal of stress for her. However, he also indicated that there were many other non-employment factors in Fox's life that were more likely to be the "real sources" of stress. . . . [These included] great financial difficulties. . . . the Caesarean births of her children, her difficulties in caring for them, and surgery which Fox had for the removal of an ovary.

*Id.* at 978–79. The Board denied Fox's claim on the basis that Fox had not showed that her employment at Alascom had "produce[d] mental stress and tension greater than all employees must experience." *Id.* at 980. In addition to arguing that Fox had not established this "preliminary link," Alascom argued before the Board that Fox's claim was barred by AS 23.30.100 and AS 23.30.105. However, the Board did not address these limitations issues in its decision and order:

The defendant contends that (1) the applicant did not give notice of injury or file her claim in a timely manner and, therefore, her claim is barred under either A.S. 23.30.100 or A.S. 23.30.105 and (2) there is no evidence relating her present disability to her work at Alascom. Because of the board's ultimate conclusion

1. Fox took medical leaves of absence from Alascom from April 11–September 22, 1980, February 4–February 24, 1981, and February 2–September 20, 1982. Although Alascom classified the extended 1980 leave as a maternity leave, it was apparently much lengthier than originally anticipated because of Fox's fears of going back to work. In her deposition, Fox ascribed all of the emotional problems she was experiencing to her job, denying that they had any connection to her recent childbirth.

that the applicant's claim is not compensable, the notice and statute of limitations issues are not addressed in this decision.

*Fox v. Alascom, Inc.*, AWCB Dec. No. 83–0207 (July 27, 1983). Neither Fox nor Alascom appealed the Board's failure to address these issues, and they were not addressed by either the superior court or this court in the prior appeal. Instead, Fox appealed the Board's decision on the "preliminary link" issue. The superior court affirmed. 718 P.2d at 980.

On appeal, this court reversed, rejecting the superior court's affirmance of the Board's "greater than all employees must experience" test. *Id.* at 982.[2] We held:

> We see no reason to vary from the traditional analysis in mental injury cases by imposing additional requirements on the quality or quantity of employment conditions.
>
> . . . .
>
> ... The "preliminary link" and presumption of compensability is established if there is evidence that the employment contributed to the injury.
>
> . . . .
>
> ... The record contains evidence that the employment was a factor in creating Fox's disability. This is enough to establish the presumption of compensability. On remand, Alascom may rebut the presumption by presenting substantial evidence that Fox's disability was not work-related through (1) affirmative evidence that the disability was not work-related, or (2) elimination of all reasonable possibilities that the injury was work connected. If Alascom does rebut the presumption then Fox will have to prove all the elements of her claim by a preponderance of the evidence.

*Id.* at 983–84 (citations omitted).

On remand, Alascom again raised the untimely-notice-of-claim and statute of limitations issues. Fox "argue[d] the timeli-

ness issues cannot be raised again and, if they can, the notice and claim were timely." The Board disagreed. It first summarily rejected Fox's argument that Alascom could not reassert the timeliness issues on remand, stating: "Employee cites no laws or cases that support her argument and we are unaware of any such restriction." It then held that Fox should have filed a notice of injury by August 31, 1980 (30 days after August 1, 1980), and should have filed her claim by August 1982 (two years after August 1, 1980). Because Fox had not met these deadlines [3] and because her failure to file a timely notice of injury was not excused under AS 23.30.100(d)(2), the Board dismissed her claim as untimely. The Board made no decision as to the merits of Fox's claim.

The Board's decision to begin the running of the statutory periods on August 1, 1980, was based on its finding "that by August 1980 Employee knew or reasonably should have known the nature of her condition (alleged work stress causing alleged mental and physical ailments), the seriousness of the condition (missing time from work and the need for psychiatric treatment) and the compensable nature of the condition (she and her doctors believed her work was at least in part responsible for her condition, she needed treatment and she was missing time from work.)" The Board, with one member dissenting, rejected Fox's contention that her "condition was 'latent' and that the time to file the claim was extended until her complete breakdown." It stated further: "Given the nature of mental illnesses, the need for treatment, and the fact that they are to [be] judged by the same standards as traumatic injuries, we believe that it is particularly important that an employee give timely notice and timely file because the condition is not as easily identifiable by an employer as traumatic injuries."

---

**2.** The legislature overruled this court's decision on this issue by passing legislation creating substantially greater requirements for obtaining compensation for mental injury caused by men-

tal stress than for other injuries. *See infra* note 6.

**3.** No notice of injury was sent and the claim was not filed until November 1982.

Fox appealed the Board's decision to the superior court, which affirmed. This appeal followed.

## III. DISCUSSION.

### A. *The Board and the Superior Court Did Not Err in Considering the Timeliness Issue on Remand.*

■ Both the Board and the superior court rejected Fox's position that on remand Alascom was barred from raising the untimely-notice-of-claim and statute of limitations issues. The superior court reasoned as follows:

> Fox also argues that these issues should have been cross-appealed by Alascom and that its failure constituted waiver. We disagree. Alascom did not waive those issues by failing to cross-appeal or argue them in *Fox v. Alascom, Inc.* Alascom had no reason to complain because on these issues there had been no judgment and it had initially prevailed on the other. *See, Alaska Brick v. McCoy,* 400 P.2d 454 (1965) (cited by both Alascom and Fox). An appellee who does not wish a change in the decree appealed from is not required to cross-appeal in order to preserve his right to urge errors in a district court's ruling that would, if accepted by the appellate court, support an affirmance of the appealed decree. *Dandridge v. Williams,* 375 [397] U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Dickinson v. Auto Center Mfg. Co.,* 733 F.2d 1092 (5th Cir.1983).

In our view the superior court's analysis is correct. We therefore hold that neither the Board nor the superior court erred in considering the timeliness issue on remand.[4]

### B. *The Board Erred in Concluding That the Employee's Claim Was Barred by Failure to File a Claim During the Applicable Limitations Period.*

■ The relevant statutory provisions concerning the time periods in question were as follows:

> *AS 23.30.100. Notice of injury or death.*
>
> (a) Notice of an injury or death in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death to the board and to the employer.
>
> ....
>
> (d) Failure to give notice does not bar a claim under this chapter
>
> ....
>
> (2) if the board excuses the failure on the ground that for some satisfactory reason notice could not be given;
>
> ....
>
> *AS 23.30.105. Time for filing of claim.*
>
> (a) The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury....[5] It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined

---

**4.** *See also* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[10], at 174 (2d ed. 1988) ("In the case of a remand for further proceedings, the mandate constitutes the law of the case only on such issues of law as were actually considered and decided by the appellate court, or necessarily to be inferred from the disposition on appeal. In the course of subsequent proceedings directed or permitted by the mandate, the district court otherwise will apply the law as it reads it, subject to correction on a second appeal.") (Footnote omitted.)

**5.** In *W.R. Grasle Co. v. Alaska Workmen's Compensation Board,* 517 P.2d 999 (Alaska 1974), this court "conclude[d] that the effect of the 1962 amendment [to AS 23.30.105(a), which added the final sentence of the subsection concerning latent defects] was to repeal the four-year statute contained in the second sentence of AS 23.30.105(a)." *Id.* at 1002. In its appellate brief, Alascom asserts that Fox's claim is barred by the four-year statute of limitations. We conclude on the basis of *Grasle* that this claim has no merit.

by the board, time limitations notwithstanding.

. . . .

*AS 23.30.265. Definitions.*

. . . .

(10) "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment;

. . . .

(17) "injury" means accidental injury or death arising out of and in the course of employment. . . .[6]

■ The time for filing a claim for disability is tolled until "the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement." AS 23.30.-105(a); *see Wade v. Anchorage School District,* 741 P.2d 634, 641 (Alaska 1987). Although AS 23.30.100 does not explicitly provide for any tolling of the 30–day notice period, the Board correctly interpreted AS 23.30.100(d)(2) to include an implied condition tolling the time to file " 'until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.' " *Alaska State Housing Auth. v. Sullivan,* 518 P.2d 759, 761 (Alaska 1974) (quoting 3 A. Larson, *The Law of Workmen's Compensation* § 78.41, at 60 (1971)). Thus, the relevant inquiry as to when and whether the statutory periods are tolled is the same. In *Sullivan,* we affirmed the Board's determination that "if an injury was not of a type that a reasonably prudent man would report at the time of its occurrence because it did not seem to be of a serious nature, then the claimant

would not be barred by his failure to comply with the 30–day notice requirement." *Id.* at 761, 762[7] (footnote omitted).

In regard to the timeliness issue the Board concluded that "the Employee knew and reasonably could have been expected to know of her condition by August 1980." The Board went on to explain that:

By 1976 she admits doctors were telling her that she should get counseling for her work stress and it was causing her to use sick leave. . . . Between May and September, 1980 it was clearly evident to both Employee and her physicians that she believed her job caused her condition and psychiatric care was recommended. (Wilder's July 30, 1980 report, Fox Dep. 42–44)

We find that by August 1980 Employee knew or reasonably should have known the nature of her condition (alleged work stress causing alleged mental and physical ailments) the seriousness of the condition (missing time from work and the need for psychiatric treatment) and the compensable nature of the condition (she and her doctors believed her work was at least in part responsible for her condition, she needed treatment and she was missing time from work.)

Using August 1, 1980 as the starting point, her notice of injury should have been filed by August 31, 1980. . . .

Using August 1980 as the starting point, Employee should have filed her claim by August, 1982. Employee acknowledges the claim was not filed until November 1982.

■ In this case Fox did not file for disability until the occurrence of her

---

6. In 1988, the legislature amended subsection (17), adding to the definition of injury the following limitation:

"[I]njury" does not include mental injury caused by mental stress unless it is established that (A) the work stress was extraordinary and unusual in comparison to pressures and tensions experienced by individuals in a comparable work environment, and (B) the work stress was the predominant cause of the mental injury; the amount of work stress shall be measured by actual events; a mental injury is not considered to arise out of and in the course of employment if it results from a

disciplinary action, work evaluation, job transfer, layoff, demotion, termination or similar action, taken in good faith by the employer.

Ch. 79, § 42, SLA 1988 (effective only to injuries sustained on or after June 1, 1988, ch. 79, § 50, SLA 1988).

7. This is consistent with Professor Larson's criteria for judging timeliness, namely the nature, the seriousness, and the probable compensable character of the injury or disease. 2B A. Larson, *The Law of Workmen's Compensation* § 78.41(d) (1983).

claimed nervous breakdown in 1982. *See Fox I*, 718 P.2d at 978. On November 30, 1982 she applied for disability benefits as a result of her February, 1982 breakdown. She listed this breakdown as her claimed "injury." Fox does not dispute that she had experienced work-related stress prior to the breakdown. While it may be that she could have claimed disability benefits for the stress she had experienced prior to her 1982 breakdown, she cannot be penalized for absorbing the costs of her earlier stress, and seeking Workers' Compensation benefits only when that stress culminated in a breakdown. An employee need not claim disability for every pang of pain in order to claim disability benefits for a more fully developed injury. Thus, the relevant limitations periods for filing her breakdown-related claim did not begin to run when Fox began to suffer from work-related stress. Rather, the limitations periods started to run as of the date she became aware of her work-related breakdown. Thus, we hold that the superior court erred in affirming the Board's decision to the extent that it would preclude Fox from seeking compensation for losses related to the 1982 breakdown.[8]

Fox filed her claim for disability benefits on November 30, 1982, well within any applicable limitations period, whether the relevant period is that relating to latent or traditional injuries. However, it cannot be ascertained from the record whether Fox notified her employer of her claim within the applicable 30-day period, or whether circumstances exist which would excuse compliance with the 30-day period.[9] Neither the Board nor the superior court addressed these issues, as they viewed Au-

gust 1, 1980 as the date on which the limitations periods began to run. Thus, on remand the Board must determine whether:

(a) Alascom was notified of the claim within 30 days of the date it became "apparent that a compensable injury ha[d] been sustained," *Sullivan*, 518 P.2d at 761; and/or,

(b) "the board [has reason to] excuse[ ] the failure [to give notice] on the ground that for some satisfactory reason notice could not be given," or that a failure to give notice is otherwise excused pursuant to the provisions of AS 23.30.100(d).[10]

The decision of the superior court is REVERSED and REMANDED for proceedings consistent with this opinion.

---

**8.** The decisions of the Board and superior court are affirmed to the extent that they would preclude Fox from claiming disability benefits for losses incurred as a result of the stress causing her to take the extended 1980 medical leave of absence. As to that injury, the Board ruled on substantial evidence that the limitations periods would have started to run in August of 1980.

**9.** *See infra* note 10.

**10.** Alaska Statute 23.30.100(d) reads:
(d) Failure to give notice does not bar a claim under this chapter

(1) if the employer, an agent of the employer in charge of the business in the place where the injury occurred, or the carrier had knowledge of the injury or death and the board determines that the employer or carrier has not been prejudiced by failure to give notice;
(2) if the board excuses the failure on the ground that for some satisfactory reason notice could not be given;
(3) unless objection to the failure is raised before the board at the first hearing of a claim for compensation in respect to the injury or death.